[No. 29324.     *En Banc.*     May 28, 1945.]

Fred G. Guenther, *Appellant,* v. Equitable Life Assurance Society of the United States, *Respondent.*[1]

*Skeel, McKelvy, Henke, Evenson & Uhlmann, Altha Perry Curry, Catlett, Hartman, Jarvis & Williams,* and *James G. Mulroy,* for appellant.

*Kerr, McCord & Carey,* for respondent.

Simpson, J.—This action was brought by plaintiff to recover the sum of $6,825 from defendant as payment for

[1] Reported in 159 P. (2d) 389.

services rendered in securing a mortgage loan for defendant. It is alleged in the complaint that in the summer of 1939, defendant, through two loan supervisors of its company, agreed to pay plaintiff commissions for securing mortgage loans for the defendant. The amount of the commission was to be one per cent of the first one hundred thousand dollars of the loan and one half of one per cent in excess of that amount.

During the years 1940, 1941, and 1942, plaintiff secured for defendant about twelve of such loans and was paid therefor. In March, 1941, plaintiff procured and submitted to defendant the proposed loan to the United Medical & Dental Building Corporation in the city of Seattle in the amount of $1,300,000. Thereafter defendant, acting upon the information and data furnished by plaintiff and upon practically the same terms submitted by plaintiff, did loan to the United Medical & Dental Building Corporation the sum of $1,265,000.

Defendant filed an answer, which to all intents and purposes was a general denial. The case was tried to the court, sitting without a jury. At the close of the trial, the court made findings of fact and conclusions of law and then entered its judgment in favor of defendant. Plaintiff has appealed.

He contends that the court erred in the following particulars: (a) Entering judgment for defendant; (b) concluding that plaintiff was not a procuring cause of effecting the loan; (c) entering finding of fact No. 7; (d) incorporating its oral decision in the statement of facts. Other assignments are made, but they are in fact included in those just mentioned.

It is admitted that respondent made loans upon property in Seattle and from time to time paid appellant commissions upon loans placed by respondent at the instance of appellant. It is also admitted that respondent loaned $1,265,000 to the United Medical & Dental Building Corporation on or about March 15, 1942. The borrowing corporation owns an office building on Olive street, between Westlake and Sixth street, in the city of Seattle, Washing-

ton. The building is eighteen stories in height and accommodates a bank and store 'on the ground and second floors. The offices are occupied by doctors and dentists.

The actors in this business drama were as follows:

Appellant, Fred G. Guenther, a resident of Seattle for a period of twenty-five years, was engaged in the mortgage loan brokerage and real estate business, with offices in the Exchange building and later in the Hoge building.

Ralph H. Davis of Seattle, who became assistant loan supervisor of respondent corporation in the fall of 1940 and, in the spring of the succeeding year, was the loan supervisor of respondent corporation. He had held the latter position since 1941. His territory covered Washington, Oregon, and the northern portion of Idaho. Mr. Davis' duties were to write life insurance, to recommend certain types of loans, to solicit and take applications for loans. Prior to the time Mr. Davis assumed his duties, respondent was represented by Ogden Johnson. During the time Mr. Davis was supervisor, several agents, including appellant, were submitting loans to the company.

Ben B. Ehrlichman was president of the United Medical & Dental Building Corporation. Frank D. Hall was chief appraiser of respondent corporation, with offices in New York City. William D. Shannon was a property management engineer in Seattle and a member of the board of directors which operated the Medical-Dental building. David Lake was engaged in the mortgage loan business in Seattle. C. J. Sauter was the agency manager of respondent company.

During the month of June, 1940, Davis received from Lake written information concerning the financial condition of the United Medical & Dental Building Corporation. The report was introduced in evidence and was known throughout the trial as A, B, C, and D of exhibit 7. The information related to the size and office space in the building, its tenants, its income (gross and net), its original cost, and a financial history covering the years 1931 to 1940, inclusive. The report was given respondent's office

for the purpose of procuring a loan from respondent to the United Medical & Dental Building Corporation. Mr. Davis received the survey report, made a copy of it, and returned the original to Mr. Lake.

In March, 1941, appellant submitted to Davis a proposal to place a mortgage loan upon the Medical-Dental building in the sum of $1,300,000 and submitted data concerning the financial situation of the building corporation. The data was known during the trial as exhibits 2, 3, 4, 5, and 6, and contained the same information given by Mr. Lake, except that exhibit 6 was a letter dated March 26, 1941, advising Davis that the mortgage loan could be broken into a first mortgage of $1,000,000 and a second mortgage of $300,000, the total to bear interest at five per cent until the second mortgage was paid at four and one-half per cent until the principal was reduced to $900,000, four and one-fourth per cent until reduced to $750,000, and the balance at four per cent until the loan was repaid. The mortgage term was to be twenty years.

April 7, 1941, Davis wrote appellant that his company would not consider the loan in excess of approximately $850,000. March 15, 1942, a loan was made to the respondent in the sum of $1,265,000.

The evidence given by the various interested witnesses may be summarized as follows: Appellant stated that, during the year 1939, he contacted Ogden Johnson and told him that he wanted to develop loans on large buildings and that his company (respondent) paid a commission of one per cent on the first $100,000 and one half of one per cent on any amount over that sum. Johnson gave appellant a list of property in which his company was interested. During March, 1941, Davis stated that he was interested in large loans, and appellant told him of the Medical-Dental building, and Davis said, "I know something about that building," and then stated that Lake had given him some figures on it, but that he was not under any obligation to Lake. He saw Ehrlichman and told him that he had some business with respondent. Ehrlichman said he

would need about $1,300,000; further, that he would be glad to work with appellant. On a visit to Ehrlichman's office, the bookkeeper of the United Medical & Dental Building Corporation was called in and gave appellant the information contained in exhibits 2, 3, and 4, which were then delivered or sent to Davis. Ehrlichman authorized appellant to make and submit to respondent an application for a loan in the amount of $1,300,000 and stated at that time that he had given the same financial statement to Lake and Walter Williams. When the papers were delivered to Davis, he was told by him that the loan looked encouraging, that he would keep it on ice and send it through the regular channels. Appellant never secured an application from Ehrlichman.

Mr. Davis testified that, at the time appellant made the first loan for respondent, he was told that the only authority he (Davis) had was to recommend loans, that it was necessary to secure the appraiser's report and to relay all information to the home office for final approval. He told appellant that the routine of business was as follows: The broker brought in the information and application for the loan, which was submitted to the financial committee of the home office for approval or disapproval and that the commission also had to be approved. Appellant was not told that he would be protected if he secured a loan for respondent. At the time the information was received from Davis, the company had in its office the same information previously received from Mr. Lake. During the month of October, Davis went with Hall to see Shannon. Shannon showed them the same figures as given by appellant and Lake. Shannon was asked to contact Ehrlichman for Davis, who received a letter from Ehrlichman sometime prior to October 28, 1941, which gave detailed information concerning the Medical-Dental building and its income. The figures were then checked with the books of the company. The loan was recommended to the home office and authority was given to make the appraisal. Later, the application was approved by the home office.

The testimony of C. J. Sauter concerned the business done with Lake and confirmed the statements made by Davis.

Shannon's testimony contains the following information: He talked to Ehrlichman about the loan and at his request made a study of the Medical-Dental building setup. This was obtained from balance sheets and profit and loss sheets of the company. He satisfied himself that the conditions were good and recommended a refinancing of the building and then reported the information to Ehrlichman. When asked if he knew of anyone who might be interested in making a loan, Mr. Shannon stated that he had had some negotiations with respondent. During the month of September, 1941, Shannon called Sauter and told him that he would like to discuss a loan with him. He (Shannon) was referred to Mr. Davis. About the middle of September, 1941, Davis and Hall came to Shannon's office and were told that the witness was interested in a firm that wanted to borrow about $1,000,000 and explained the operating statement. Shannon called Ehrlichman and asked him to get the necessary information concerning the building and later told him that, all things being equal, he wanted Sauter to get the business.

Ehrlichman testified that, prior to 1941, the owners of the Medical-Dental building had discussed the advisability of refinancing the building, and that many men in the mortgage business called and they were given figures and data. He talked with Walter Williams, of the Continental Company, and with others. He also talked with appellant in March, 1941, and was told that he was in the mortgage loan business. Ehrlichman furnished appellant with statistics which were available to anyone interested in the Medical-Dental bonds. He never promised plaintiff that the refinancing would be done through him as a broker, nor did he ever tell him that he, Ehrlichman, would make an application for a loan through him. He had no agreement with the plaintiff. He then saw Mr. Shannon, who said he had good connections with people who could make the loan and mentioned the respondent corporation. Mr.

Davis then called and the situation was gone over with him. Subsequent to the discussion, the witness wrote appellant a letter which outlined the financial history of the building from 1931 to 1941. Afterwards, Davis called at Ehrlichman's office and was furnished with additional information relative to the property. Sometime thereafter, an application for a loan was filed. He admitted writing plaintiff's exhibit 24, which reads as follows:

"1,000,000 1st  300,000 2nd  total to bear int. at 5% until 300,000 pd. then 4½% until reduced to 900,000 then 4¼% until reduced to 750,000  then 4% thereafter.

"Maturity—pay all excess over net requirement costs & taxes until 300,000 paid, thereafter 40,000 per annum to final due date 20 years."

The trial court, in its findings of fact, found:

"On March 26, 1941, the plaintiff, by a letter addressed to the defendant, submitted to the defendant a proposal to place a new mortgage loan on said building in the amount of $1,300,000 and therewith and immediately thereafter submitted to Ralph H. Davis, loan supervisor of the defendant, certain data relative to the revenues and operating expenses and value of said building. On April 7, 1941, Ralph H. Davis, loan supervisor of the defendant, by letter notified the plaintiff that the defendant would not consider making a loan on said property in excess of approximately $850,000 and no loan was made in consequence of the proposal submitted by the plaintiff to the defendant.

"Later, and in the month of October, 1941, the said United Medical and Dental Building Corporation, through Ben Ehrlichman, its President, negotiated with Ralph H. Davis, loan supervisor of the defendant, respecting a mortgage loan on said building, the proceeds of which were intended for use in retiring the existing bond issue. As a result of such negotiations, directly between the said United Medical and Dental Building Corporation, through its corporate officers, and the defendant acting through its said loan supervisor and its corporate officers, a mortgage loan on said building was consummated in the principal amount of $1,265,000, said mortgage being executed of record on the 27th day of February, 1942.

"The loan so made by the defendant to United Medical and Dental Building Corporation, was not procured by the plaintiff nor made as a result of plaintiff's activities as

broker. At no time prior to the making of said loan was the plaintiff authorized by said United Medical and Dental Building Corporation to represent it in negotiating for the placing of a mortgage loan on said building."

Predicated upon the record to which we have just referred, appellant contends that he had a contract with the respondent to obtain loans and that the loan effected on the Medical-Dental building was in fact brought about through his efforts; further, that the negotiations were arbitrarily discontinued by respondent and later reopened by its own initiative and without giving appellant the opportunity to proceed. Appellant argues that the actions on the part of the agents and officials of respondent company warrant a finding of bad faith on its part which, in effect, gives appellant the legal right to be considered the procuring and efficient cause of obtaining a borrower for the loan effected on the Medical-Dental building. It is the position of appellant that the evidence preponderates in his favor.

■ It is the law of this state that a broker is entitled to his commission in any case where a deal is brought about as a result of his efforts, provided of course that he had a contract for a commission. See *Bloom v. Christensen,* 18 Wn. (2d) 137, 138 P. (2d) 655, and cases cited therein. On the other hand, the broker is not entitled to recover commission unless he has a contract providing for the doing of certain acts; further, that those acts are performed in accordance with the terms of the contract and that the broker's efforts are the procuring cause of the transaction ultimately consummated between the principals. *Conner Co. v. McCollister & Campbell, Inc.,* 9 Wn. (2d) 407, 115 P. (2d) 370.

■ The principal question presented in this case is a factual one, decided by the trial court upon conflicting evidence. The judgment may not be overturned unless we can say that the evidence preponderates over the findings of the trial court. The evidence presented in this case is not of that character which justifies us in holding that the trial court reached the wrong conclusion. It is

our considered opinion that the trial court was entirely correct in entering judgment for respondent.

Considering the evidence as a whole, we find that appellant had what might be termed an off-hand contract to secure loans for respondent and that he had secured some loans and had been paid for his efforts. Appellant knew from his former experience in dealing with agents of respondent and from the statements made by Mr. Davis that the local agents had no authority to accept loans, but that the broker must first report the loan and await the pleasure of the home office before even an appraisal could be made, and that after the appraisal was made the whole matter must be sent to the New York office for approval. The evidence shows that appellant did not secure the application for the loan.

Another factor to be considered is that respondent did not receive any new information from appellant. The facts concerning the Medical-Dental building loan had already been conveyed to the respondent's agents by Mr. Lake, and appellant knew of that fact. The report of the Medical-Dental building loan was not the result of a survey made by appellant, but was simply the conveying to respondent information received by Mr. Ehrlichman, who testified that he gave the information to any broker who desired to secure it.

Appellant makes much of the memorandum given him by Ehrlichman. We do not attach much importance to the memorandum, though it is similar in terms to those contained in plaintiff's exhibit 6 to which we have referred. The terms were well known to many brokers and were finally given to respondent by the representatives of the corporation which owned the Medical-Dental building and were entirely different than those contained in the mortgage placed upon the building.

The burden was upon appellant to prove the allegations of his complaint by a preponderance of the evidence. That burden was not met by appellant.

The last assignment of error states that the court should not have incorporated its oral decision in the state-

ment of facts. We fail to understand what is meant by this assignment of error because there is nothing in the statement of facts or records in this case which shows that the oral decision of the court was improperly attached to the statement of facts. At the conclusion of that portion of the statement of facts which shows the evidence taken, we find what is termed "court's oral decision," and that is followed by a certificate of the trial court which says that the statement of facts contains a record of all the testimony introduced upon the trial of said cause and a record of all objections, motions, admissions, offers to prove, rulings, and exceptions made and taken upon said trial. If there was any error committed by the trial court relative to the contents of the statement of facts, it is not disclosed by any record presented to this court.

The judgment of the trial court is affirmed.

MILLARD, STEINERT, ROBINSON, JEFFERS, and GRADY, JJ., concur.

BLAKE, J. (dissenting)—I dissent. I think Lake's activities in 1940 are not in any way relevant to the issues presented in this case. Obviously, had either he or the defendant thought he had any interest or claim in the premises, he would have come in by way of intervention or would have been brought in by way of interpleader.

Nor do I think the decision may properly rest upon the theory that the issue is purely factual and we are bound by the findings of the trial court unless we can say the evidence preponderates against them. Rather, the decision should depend upon the conclusions to be drawn from undisputed facts.

What I regard as the essential and controlling facts in the case are stated in the majority opinion as follows:

"In March, 1941, appellant submitted to Davis a proposal to place a mortgage loan upon the Medical-Dental Building in the sum of $1,300,000 and submitted data concerning the financial situation of the building corporation. The data was known during the trial as exhibits 2, 3, 4, 5 and 6 and contained the same information given by Mr.

Lake, except that exhibit 6 was a letter dated March 26, 1941, advising Davis that the mortgage loan could be broken into a first mortgage of $1,000,000 and a second mortgage of $300,000, the total to bear interest at five per cent until the second mortgage was paid at four and one-half per cent until the principal was reduced to $900,000, four and one-fourth per cent until reduced to $750,000, and the balance at four per cent until the loan was repaid. The mortgage term was to be twenty years.

"April 7, 1941, Davis wrote appellant that his company would not consider the loan in excess of approximately $850,000. March 15, 1942, a loan was made to the respondent in the sum of $1,265,000."

These facts, to my mind, lead irresistibly to the conclusion that plaintiff was the procuring cause of the loan. He presented the data upon which it was finally made. (That Lake submitted similar, or the same, data the year before is wholly immaterial—he did not follow through.)

Plaintiff submitted a ·definite proposition for a loan in a definite amount. Defendant rejected the proposition and offered a loan in two thirds of the amount. Then it turned around and, ignoring plaintiff, made a loan to his client in substantially the amount embraced in his proposition. I think he earned, and is entitled to, a commission.

BEALS, C. J., and MALLERY, J., concur with BLAKE, J.