[No. 30340. Department One. December 22, 1947.]

ED. THYS *et al., Appellants,* v. WILFRED E. RIVARD *et al.,*
*Respondents.*[1]

'Reported in 187 P. (2d) 952.

*Cheney & Hutchinson,* for appellants.

*Velikanje & Velikanje* and *Smith & Tuck (Ford E. Smith,* of counsel), for respondents.

SIMPSON, J.—This is the second appeal by plaintiffs in this action. Upon the first appeal, *Thys v. Rivard,* 25 Wn. (2d) 345, 171 P. (2d) 255, this court reversed a judgment entered by the trial court and remanded the case for further proceedings in the superior court, and in so doing, used the following expression:

"We hold that the matter of respondent's liability to appellants depends upon whether or not respondent constructed and used a machine or appliance which is covered

by appellants' patents. If respondent did this, while he is not responsible as for infringement of patent, he is liable to appellants for the payment of royalties under the contract which he signed.

"The cause is remanded to the superior court, with instructions to determine this question. The court may, in the exercise of its discretion, permit the introduction of further evidence upon this phase of the case which may be offered by either party."

Subsequent to the second trial, judgment was entered in favor of the defendants.

Appellants' assignments of error, twelve in number, attack the findings, conclusions of law, and judgment of the trial court. They also complain that the superior court erred in allowing respondents to amend their answer at the beginning of the second trial, and in denying a motion for a new trial.

The facts, with the exception of those relating to patent infringement, are set out in the former opinion. In that opinion, we construed the meaning of the written contract entered into between the parties to this action and determined their rights and liabilities thereunder, except as noted above.

The first trial was had in June, 1945; the second, March 27, 1947.

Respondent Rivard was the only witness called at the second trial. His testimony concerned the amount of hops dried subsequent to the first trial, and that in 1945 he added four picking drums, or four drums with cotton belting underneath the diamond mesh belt on the hop-picking machine, and had used it for two seasons. He described the drum as follows:

"A. The drum itself is about eight inches in diameter, and the bar is an inch-and-a-half bar on top of that. It is an octagonal drum, and there must be—there must be about eight bars across there and then a piece of belting about eight inches nailed on every one of those bars all the way around. It is like a fan; it rotates . . .

"We put them on there to help the small hops that hangs on the diamond mesh underneath that the fingers from the

top can't knock off. They hang through the belt, and these here flop, goes around, and knocks them off."

The appellants contend that the Rivard machine infringes upon their patents and base their claim on the doctrine of equivalency. On the other hand, respondents take the position that there was no infringement; but, if it be held that their machine did infringe upon the patent, there was present a file wrapper estoppel which precluded recovery by appellants.

■ Having in mind that file wrapper estoppel is a complete defense, even though there was an infringement, we consider the question of estoppel first. The file wrapper of the patent office contains a copy of the records, documents, papers, and drawings relating to the letters patent. A consideration of the file wrapper and the claims of the patentee, together with the use of the thing patented, determines whether there is an estoppel.

Appellants contend that estoppel was not properly pleaded. Estoppel was not mentioned as a defense during the first trial. It was brought into the case, as disclosed by the statement of facts, at the beginning of the second hearing, and in the following manner:

"MR. VELIKANJE: Your Honor, at this time I would like to move to amend our Supplemental Answer and incorporate a plea of estoppel as to the years 1945 and 1946. Due to the fact that plaintiff and defendant both joined issue on declaratory judgments—each of the parties asked for declaratory judgments—and if Mr. Hutcheson's statement is correct that the Supreme Court has taken out any declaratory judgment action, they are therefore estopped to recover for any years beyond 1944, and we move that our Answer be amended to conform to that.

"MR. HUTCHESON: We certainly object to any amendment of that kind at this time. This order permitting that amendment on our part was entered months and months ago. This matter has been delayed because of Mr. Rivard's absence on a vacation trip to Mexico City; otherwise it would have been tried last fall. That order was entered and amendment on our part allowed last fall, and, if they had any amendment they desired to make, they should have done it at that time. And so I object, in the first place, because

it is not timely; and, secondly, while I may have a little difficulty in understanding what counsel means, it seems to me that very obviously there is just no merit to that. In other words, the fact that the Supreme Court ruled that the declaratory judgment feature is eliminated, a declaratory judgment applies to the future, but that applies to the 1947 hop season which, being in September of each year, obviously has not yet arrived, the mere elimination of the declaratory judgment feature as to the future of course does not mean that we are not entitled to recover for 1945 and 1946, so there manifestly could be no estoppel there. The case is to be determined by Your Honor as of this date, and there have been these two additional years, and there simply is no basis for any estoppel involved there at all.
. . .

"I would like to understand more clearly what counsel contends is the basis for the estoppel. That we are estopped because we asked for a declaratory judgment? MR. VELIKANJE: That is correct."

The file wrapper was introduced in evidence during the first trial by respondents and was known as exhibit No. 21. The purpose of the introduction of the exhibit was, as stated by counsel for respondents, to prove that Thys made certain limitations in his patent claim, for the purpose of avoiding a former patent known as the Trowbridge patent. Respondents' counsel asked a witness for respondents the question: "Is the File Wrapper available to raise an estoppel against the patentee?" An objection was then interposed by counsel for appellants, and the question was never answered.

■ A plea of estoppel must be properly framed as such. All the essential facts constituting estoppel must be pleaded with certainty and particularity—that is, the matter claimed to operate as an estoppel must be pleaded. Of course, if the allegations amount to an estoppel, it is sufficient, although the estoppel be not pleaded in so many words. *Walker v. Baxter*, 6 Wash. 244, 33 Pac. 426; *Jacobs v. First Nat. Bank*, 15 Wash. 358, 46 Pac. 396; *Interstate Sav. & Loan Ass'n v. Knapp*, 20 Wash. 225, 55 Pac. 48, 931; *Anderson v. New York Life Ins. Co.*, 34 Wash. 616, 76 Pac. 109; *Spokane v. Costello*, 57 Wash. 183, 106 Pac. 764; *Olson v. Springer*, 60 Wash. 77,

110 Pac. 807; *Johns v. Clother,* 78 Wash. 602, 139 Pac. 755; *Beaulaurier v. Washington State Hop Producers,* 8 Wn. (2d) 79, 111 P. (2d) 559; *Granger v. Boulls,* 21 Wn. (2d) 597, 152 P. (2d) 325, 155 A. L. R. 523.

█ This rule applies to patent cases:

"The defense of estoppel requires a special plea to introduce it into litigation. Thus, for example, if a former judgment or decree is not pleaded as an estoppel by a defendant, he refers the merits of the controversy anew to the court. The former adjudication may be used as an argument, but it cannot be relied upon as a bar, unless it is set up in a special plea." 3 Walker on Patents (Deller's ed.) 1999, § 686.

The insufficiency of the pleading upon which respondents seek to predicate a file wrapper estoppel is patent upon its face. The amended pleading contained in the motion made by counsel for respondents did not in any manner refer to file wrapper estoppel, and could not support any of the evidence introduced to prove that estoppel.

█ Respondents cannot take advantage of the rule mentioned in *Beaulaurier v. Washington State Hop Producers, supra,* to the effect that the pleading will be presumed to be amended to conform to the evidence, and thereby present a defense of estoppel. That rule applies only in those cases in which there is no objection to the introduction of the evidence. In this case, appellants' attorney objected to the introduction of the file wrapper, and to the proposed amendment which contained a plea of estoppel. The defense in this case, based upon estoppel, cannot be maintained.

We come now to the question of whether there was an infringement of the Thys patent; or, to put it in another way, did respondents use a machine or appliance which was already covered by appellants' patent?

█ The trial court held that there was an infringement and based its conclusion on the doctrine of equivalency. The definition or test of equivalency is stated as follows:

"Similarities or differences are to be determined, not by the names of things, but in the light of what the elements do, and substantial, rather than technical, identity is the test. More specifically, it is necessary and sufficient to con-

stitute equivalency that the same function be performed in substantially the same way or manner, or by the same, or substantially the same, principle or mode of operation; but where these tests are satisfied, mere differences of form are immaterial; a part is no less equivalent because it performs additional functions; and parts may be equivalents whether made integral or separate." 48 C. J. 311, § 510.

"To establish an infringement, it is not essential to show that the defendant adopted the device of process in every particular; proof of an adoption of the substance of the thing will be sufficient. 'In one sense,' said Justice Brown, 'it may be said that no device can be adjudged an infringement that does not substantially correspond with the patent. But another construction, which would limit these words to the exact mechanism described in the patent, would be so obviously unjust that no court could be expected to adopt it.' On the other hand, the patentee is to be protected only in respect of the precise device which he has claimed and described in his patent. An instrumentality or process that is substantially different is not an infringement. The plaintiff may bring the defendant within the letter of his claims, but if the latter has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent his actual invention, he is 'as little subject to be adjudged an infringer as one who has violated the letter of a statute has to be convicted when he has done nothing in conflict with its spirit and intent.'

"The law will protect a patentee against imitation of his patent by other forms and proportions. If two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. A device or instrumentality does not, however, infringe a patent, although it serves the same purpose as the patented article, if the former lacks the features, methods, or arrangement of the latter." 40 Am. Jur. 642, Patents, § 155.

"Unless form is of the essence of the invention, or is the distinguishing characteristic thereof, or form and substance are inseparable, mere differences in form are immaterial or of little weight, and do not avoid infringement where the principle or mode of operation is appropriated and the same result is obtained by the same or equivalent means." 48 C. J. 303, Patents, § 502.

In determining whether there is an infringement, the court will look through the form for the substance of

the invention. *Winans v. Denmead,* 56 U. S. 329 (15 How. 330), 14 L. Ed. 717; *Theroz Co. v. United States Industrial Chemical Co.,* 14 F. (2d) 629.

█ It is unnecessary to quote from or consider the large number of cases which are concerned with situations alike to those in the case at bar. We adopt the rule defining the doctrine of equivalency, the reasons for the rule, and its application, as contained in the following liberal quotation from the well-considered opinion of *Saco-Lowell Shops v. Reynolds,* 141 F. (2d) 587:

"The principle applicable is that stated by Mr. Justice Curtis in the leading case of *Winans v. Denmead,* 15 How. 330, 342, 14 L. Ed. 717, as follows:

" 'It is only ingenious diversities of form and proportion, presenting the appearance of something unlike the thing patented, which give rise to questions; and the property of inventors would be valueless, if it were enough for the defendant to say, your improvement consisted in a change of form; you describe and claim but one form; I have not taken that, and so have not infringed. The answer is, my improvement did not consist in a change of form, but in the new employment of principles or powers, in a new mode of operation, embodied in a form by means of which a new or better result is produced; it was this which constituted my invention; this you have copied, changing only the form; * * *.'

"And the rule was applied and stated with great clarity by Mr. Justice Clifford in *Union Paper-Bag Machine Co. v. Murphy,* 97 U. S. 120, 125, 24 L. Ed. 935, from which we quote as follows:

" 'Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different

functions or in a different way, or produce a substantially different result.

" 'Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained.

" 'Inquiries of this kind are often attended with difficulty; but if special attention is given to such portions of a given device as really does the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome. *Cahoon v. Ring* [Fed. Cas. No. 2,292], 1 Cliff. [592], 620.

" 'Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. Curtis, Patents (4th ed.), sec. 310.'

"And in the comparatively recent case of *Sanitary Refrigerator Co. v. Winters*, 280 U. S. 30, 41, 50 S. Ct. 9, 12, 74 L. Ed. 147, the Supreme Court, in holding a latch for refrigerator doors infringed by a device which employed the same principle of operation with a slight rearrangement of parts, said:

" 'There is a substantial identity, constituting infringement, where a device is a copy of the thing described by the patentee, "either without variation, or with such variations as are consistent with its being in substance the same thing." *Burr v. Duryee*, 1 Wall. 531, 573, 17 L. Ed. 650. Except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, *one device is an infringement of another* "if it performs substantially the same function in substantially the same way to obtain the same result. * * * Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." *Union Paper Bag Machine Co. v. Murphy*, 97

U. S. 120, 125, 24 L. Ed. 935. And see *Elizabeth v. Pavement Co.*, 97 U. S. 126, 137, 24 L. Ed. 1000. That mere colorable departures from the patented device do not avoid infringement, see *McCormick v. Talcott*, 20 How. 402, 405, 15 L. Ed. 930. A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement. *Ives v. Hamilton*, 92 U. S. 426, 430, 23 L. Ed. 494.'

"In *Claude Neon Lights, Inc., v. E. Machlett & Son et al.*, 2 Cir., 36 F. 2d 574, 576, Judge Learned Hand pointed out that the doctrine of equivalents means more than that the language of claims shall be generously construed, being based upon the theory that the claim is not intended to be verbally definitive, but to cover the invention, which should to some extent be gathered from the disclosure at large. Summarizing his conclusion, with respect to the apparent conflict between the doctrine of equivalents and the doctrine that the patent is limited by the claims, he says:

" 'On the one hand, therefore, the claim is not to be taken at its face—however freely construed—but its elements may be treated as examples of a class which may be extended more or less broadly as the disclosure warrants, the prior art permits, and the originality of the discovery makes desirable. On the other, it is not to be ignored as a guide in ascertaining those elements of the disclosure which constitute the "invention," and without which there could be no patent at all.' " (Citing cases.)

 Two questions arise: (1) What is the thing patented? (2) Has that patent been infringed upon? The first is a question of law to be decided by the court as such. The second is a question of fact to be determined from the evidence produced and presented to the court. *Winans v. Denmead, supra.*

Appellants owned the rights to several patents covering machines used for the purpose of picking hops. One of those patents was allowed April 19, 1938. The purpose of the machine was to pick hops directly from the vines by removing arms and large leaves from the vines, and securing the hops for commercial use. The patented machines, as is indicated by the evidence and the trial court's memo-

randum opinion, may be described as follows: A portion of the machine consisted of an endless wire mesh belt. It also included chains for driving the belt and for supporting it, appliances for delivering clusters of hops to the upper surface of the belt, a cylinder beneath the belt, and V-shaped flexible picking fingers secured to the cylinder, their purpose being to pull hops from the vines which had been gathered onto the belt. A second belt was disposed above the wire mesh belt, the second belt having a plurality of V-shaped resilient picking fingers projecting therefrom, and means for driving the second belt in the same direction as the wire mesh belt, but at a greater speed to cause the picking fingers to break up the clusters.

The diamond wire mesh belt, many times referred to in this litigation, was like ordinary chicken wire, save that the meshes were diamond shaped. The belt was about sixty-seven inches in width, and the meshes four by two inches in size. The wire mesh belt itself was not protected by a patent, and, in fact, was not patentable. The belt was used in the machines sold by appellants, to take the hops through or over the picking fingers, and was operated by chains, shafts, bars, sprockets, and other accessories. The patent protecting the combination of that part of the hop-picking machine, was described or mentioned as an "arm picker belt." The machines sold by appellants were portable picking machines. The one used by respondents was stationary. It had twenty-six large, wooden rotating drums, arranged in two horizontal rows, with thirteen drums in the upper row, and thirteen in the lower row. The length of each drum was approximately sixty-seven inches, and about three feet in diameter. The outer surface of each drum was covered with numerous V-shaped flexible metal picking fingers. The hop vines were carried over the top of the drums, and then back through the middle of the drums. By this method hops were stripped from the arms or vines by the picking fingers fixed on the drums, and fell through the openings in the belt to a conveyor underneath, where they were removed. Portions of the hop vines remained on the belt and, at the end of the process, were discharged over its end.

Many portions of respondents' briefs refer to the screen or mesh belt as the "arm picker belt," and then argue that it is nothing but chicken wire, not covered by patent.

The evidence given by Mr. Thys in testifying concerning the machine, is as follows:

"Q. Now, will you just explain to the court, by reference to numbers, what in this Figure 2 is the Arm Picker Belt. A. The Arm Picker Belt is this part of the machine comprising the belt 42, the picking fingers 51 and the picking fingers 50, and the brush 52 in this instance, and to a certain extent the chain 43, the conveyor 43, which delivers the hops on the Arm Picker Belt. Q. Those are the things that are necessary to make up, under your patent, the Arm Picker Belt, is that correct? A. It doesn't have to be in this form, necessarily, as long as it has fingers picking on top of the belt or under the belt and picking hops— Q. (Interposing) Well, Mr. Thys, do your claims extend to that extent? A. Yes, sir. Q. Under those that you have referred to? A. Yes."

Mr. Rivard testified that he built it different from those in California. He said that he made it a little longer, and built in more picking drums, a total of twenty-six. He stated that the diamond mesh belt operated underneath the drums, and that his machine operated substantially as shown in a diagram of the Thys machine which had been admitted in evidence. His testimony so clearly indicates similarity of operation of the two machines that we set it out as follows:

"Q. Just what is it that has the picking effect, that removes the hops from the vines and the arms? A. The fingers and the rotating drum. Q. Let's see, the fingers are on the outside of each of these 26 rotating drums? A. Yes, sir. Q. All right. Anything else? A. I guess that's all. The hops fall through the diamond mesh and then they fall on the conveyor belt, and my conveyor belt brings the hops into the recleaning drum in the back end, the old-type machine. . . . The hopvine comes through the vine grasper bar over the top, then comes down in between the two, and then as they go around in between here (indicating) the fingers knock the hops, leaves and stems and everything off the hopvine, and it falls through on the diamond mesh and

through the diamond mesh onto the conveyor. Q. That is, the hops themselves which are removed from the vine fall through the diamond mesh onto the conveyor? A. Yes, sir. Q. And the arms and vines are caught by this diamond mesh? A. What's too large to go through the hole, yes. Q. So your machine operates substantially as is shown in that Thys diagram, does it not? A. Yes, sir. . . . Q. That is correct, isn't it? A. Yes, sir. . . . Q. Yes. The fingers, as I understand, are these projections from the outside of the drums? A. Yes, sir. Q. And that is the way you have used your machine during the 1943 and 1944 seasons? A. Yes, sir. . . .

"Q. Do you have a plurality of V-shaped flexible picking fingers? Do you have that? A. On the drums above the belt? Q. Yes. A. Yes, sir. Q. And those picking fingers do engage and pull off hops projecting through the meshes of the belt, don't they? A. Yes, sir."

Appellant Thys testified:

"Q. I will ask you to state whether or not the Rivard hop-picking machine embodies or does not embody the features referred to in the claims of your patent, No. 2,114,727. [Interposition by counsel and court.] A. We found that the machine employs the mechanism disclosed and claimed in my patent, using a— [Further interposition.] A. The Rivard machine employs a diamond mesh belt indicated here on 42 (indicating)— MR. VELIKANJE: Mr. Thys, what claim are you referring to? THE WITNESS: Claim 14. A. —supported by chains, as a means to drop hops on that belt. It conveys the stems and the clusters that are retained by the belt under picking fingers. The picking fingers of Mr. Rivard's machine are mounted on a drum which is the equivalent of the belt 51 shown here, and I believe that is all the combination required in that Claim 14. . . . Q. I will ask you whether there is any difference at all between the Rivard machine, which you examined, and Claim 14 of your patent, No. 2,114,727, other than the absence of the second belt on the Rivard machine and the fact that it has picking drums in lieu of a second belt. A. There is no other difference. Q. No other difference. I will ask you whether the plurality of picking drums as used in the Rivard machine is or is not a substantial equivalent of the second belt referred to in the language of Claim 14. . . . A. It is substantially an equivalent."

■ The uncontradicted evidence given by Mr. Thys was to the effect that the machine which Rivard constructed and operated was much like the one patented by himself. He stated that the diamond mesh belt is a substantial equivalent of the picking drums. He also stated that the picker belt in the hop-picking machines was used for the same purpose. He was asked whether the plurality of picking drums as used in the Rivard machine was, or was not, a substantial equivalent of the second belt used in the language of claim 14 of the patent. The answer was, "It is substantially an equivalent."

We hold that the machine constructed and used by respondents was covered by appellants' patent, and that they are liable for the payment of royalties under the contract.

The judgment is reversed, and remanded with instructions to enter judgment in favor of appellants.

MALLERY, C. J., MILLARD, SCHWELLENBACH, and HILL, JJ., concur.

_____

February 2, 1948. Petition for rehearing denied.