[No. 36690.   Department Two.   July 11, 1963.]

DERALD CHAMNESS, *Respondent*, v. GROVER MARQUIS *et al.*,
*Appellants.**

*Cleman & Crimp* and *Lawrence S. Cleman,* for appellants.

*Panattoni & Gorrie* and *Joseph Panattoni,* for respondent.

*Reported in 383 P. (2d) 886.

OTT, C. J.—July 13, 1960, Grover Marquis and Mary Marquis, his wife, executed a 90-day exclusive listing agreement with Derald Chamness, a realtor doing business as Chamness Realty, for the sale of their 22.6-acre orchard, located near Ellensburg. The realtor advertised the property for sale in a Yakima newspaper. L. M. Groenig, in response to the advertisement, contacted the realtor and was shown the Marquis property and some adjacent property by an agent of the realtor. Groenig did not purchase the property.

After expiration of the exclusive listing agreement, Grover Marquis attempted to sell the property by personally advertising it for sale. No sale was consummated.

April 16, 1961, Groenig advertised in the Yakima Herald as follows:

"ORCHARD WANTED

"Buy on lease type payments. References. Own equipment. Experienced. Box L-697. The Herald."

In response to the advertisement, Grover Marquis wrote a letter, addressed to the advertised box number, stating that he owned a 22.6-acre orchard, located near Ellensburg, which he would sell.

On or about May 11th, Groenig drove to the Marquis premises, but made no inspection of the property. During his conversation with Mr. Marquis, he was informed that a nearby orchard of larger acreage might be for sale, and it was suggested that he contact Chamness Realty. Mr. Groenig contacted the realtor and made inquiry relative to the property. He was later informed that it was not for sale.

May 11, 1961, Grover Marquis and his wife executed a 60-day listing agreement with Chamness Realty which contained these printed provisions:

"In consideration of your agreement to list the property described below with the Ellensburg Multiple Listing Service during the life hereof and to use your efforts to find a purchaser therefor, I hereby grant you for the period of 60 days from the date hereof, the *exclusive right* to sell or exchange said property or any part thereof, at the price

and terms stated hereon or at such other price or terms of exchange to which I may agree . . .

" . . . *or if it is sold or exchanged within three months after such expiration to any person to whom you . . . have previously offered it, I agree to pay you a commission . . .*" (Italics ours.)

At the request of Grover Marquis, the agent of Chamness Realty who solicited the agreement inserted the written words "Open listing, crop to be negotiated" upon the face of the contract.

Subsequent to May 11, 1961, an agent of Chamness Realty, on several occasions, brought L. M. Groenig to the premises, at which times the growing crop was inspected, and terms of sale and possible financing were discussed. Mr. Groenig, with his family, on several other occasions during the term of the listing agreement, went to the Marquis farm unaccompanied by the realtor. Later in May, Mr. Groenig made an unsuccessful attempt to arrange for financing in Seattle. During the latter part of May or early in June, the realtor called Marquis and told him that Groenig was still quite interested; whereupon, Marquis urged him to sell the property to Groenig if possible.

July 24, 1961, Groenig wrote to Marquis that he was now in a position to buy, if Marquis still wanted to sell. Marquis replied by letter that he was willing to sell his equity on terms, but that he would require a substantial down payment or "if you have some other deal in mind would be glad to listen."

August 8, 1961, Groenig and Marquis executed an earnest-money agreement for the sale of the property. The agreement required a substantial down payment. Groenig thereafter contacted the realtor and requested assistance in solving his financing problem. The realtor was not successful in raising the needed capital. Mr. Groenig raised the $12,000 down payment by mortgaging part of his personal property and the crop on the purchased premises. The sale was consummated September 13, 1961, for $39,000, which included the growing crop. The sale date was subsequent to the

60-day listing period but "within three months after such expiration."

Derald Chamness commenced this action against Grover Marquis and wife for the sales commission specified in the contract. The defendants' answer denied that the sale resulted from the listing agreement, and affirmatively alleged that the sale was consummated by direct negotiations between the owner and purchaser.

At the trial, the only testimony presented was that of the plaintiff's agent, and the purchaser, L. M. Groenig. No oral testimony was offered on behalf of the defendants, with the exception of a few questions propounded to L. M. Groenig.

From a judgment in favor of the plaintiff, the defendants appeal.

Appellants' principal assignment of error is that the written words "Open listing," noted on the face of the listing agreement, canceled the 3 months' extension provisions of the contract.

The general rule relative to the enforcement of such extension provisions is stated in 27 A.L.R. (2d) 1408 as follows:

"Frequently brokerage contracts, particularly exclusive ones, contain stipulations either that the broker shall have a right to commissions on a sale consummated after termination of the contract to a prospect procured by the broker, or that he shall be entitled to commissions on a sale within a specified time after termination of the contract to a prospect procured by him.

"*Construing contracts, whether exclusive or not, containing such stipulations, the courts in most instances have recognized that such provisions bound the owners to pay commissions on sales to the prospects within the named period after termination of the contract . . .*" (Italics ours.)

In the instant case, respondent does not contend that he is entitled to recover simply because he offered the property to L. M. Groenig. Respondent concedes that the agreement executed May 11, 1961, was an open listing; and that he had the burden to establish that he was the procuring cause of the sale. Whether the parties intended

to cancel the 3 months' extension provision by the insertion of the words "Open listing," or whether appellants were misled by the respondent, or whether there was a mutual mistake in the execution of the listing agreement, constituted defenses which must be affirmatively established by evidence. The appellants offered no evidence, and the defenses were not established. We therefore find no merit in appellants' contention that the 3 months' extension period was canceled.

■ Appellants' second contention is that the respondent was not the procuring cause of the sale, but that it was consummated by direct negotiations between the owner, Marquis, and the purchaser, Groenig.

In *Feeley v. Mullikin,* 44 Wn. (2d) 680, 683, 269 P. (2d) 828 (1954), we held that,

"When a broker is employed to procure a purchaser on certain terms and he procures a purchaser to whom a sale is eventually made, he is entitled to a commission *irrespective of who makes the sale or the terms thereof, if he was the procuring cause of the sale.* [Citing cases.]"

Accord, *Mueller v. Seefried,* 54 Wn. (2d) 792, 345 P. (2d) 389 (1959).

In its oral decision, the trial court concluded, after considering all of the evidence, including the first listing agreement, that the respondent had sustained the burden of proof. Appellants urge that it was error for the court to consider the circumstances in connection with the first listing as evidence that respondent was the procuring cause of the sale, for the reason that the first listing had terminated.

The evidence established that, during the term of the first listing, the respondent did show the property to Groenig but that no sale resulted. Thereafter, Marquis' answer to Groenig's advertisement (which contained only a box number address) resulted in Groenig's again contacting Marquis. The Marquis premises were not acceptable to Groenig at that time, and Marquis suggested that he contact Chamness Realty.

Neither of these incidents, standing alone, resulted in a sale of the property. They did serve to bring to Groenig's

attention the fact that the property was for sale, and the court could properly consider them in its determination of the issue of whether the realtor or the owner was the procuring cause of the sale. Under these circumstances, the court did not err in its consideration of these prior incidents.

The respondent proved that he showed the premises to Groenig on three different occasions; that they discussed financing, and that, in late May or early June, appellants urged respondent to sell the property to Groenig if possible. After the earnest-money agreement was executed, respondent was again asked by Groenig to assist him in securing financing.

The court did not err in holding that this evidence was sufficient to establish that respondent was the procuring cause of the sale.

Appellants contend that the court's failure to enter a formal finding of fact that respondent was the procuring cause of the sale constitutes reversible error.

The court, in its oral opinion, stated:

". . . I say that for this reason; I think that the plaintiff [respondent] was without question both the efficient cause of the sale and procurer of this buyer. . . ."

Finding of fact No. 8 states in part:

"That the Defendants [appellants] have not paid a real estate commission to the Plaintiff [respondent] and that the Defendants are now therefore indebted to the Plaintiff in the sum of . . ."

When the formal findings of fact and the court's oral decision are consistent, the findings are to be read in conjunction with the views expressed by the court. *El Cerrito, Inc. v. Ryndak*, 60 Wn. (2d) 847, 376 P. (2d) 528 (1962), and cases cited. While the omission of a decisive finding of fact is not approved, we can see no prejudice to the appellants here, in the light of the court's oral decision and the quoted finding of fact.

We find no merit in appellants' remaining assignments of error.

The judgment is affirmed.

DONWORTH, FINLEY, WEAVER, and HAMILTON, JJ., concur.