[No. 1647-1.   Division One.   January 7, 1974.]

BONANZA REAL ESTATE, INC., *Respondent,* v. GUY O. CROUCH et al., *Appellants.*

*Barnett, Robben, Blauert & Pease* and *William Merchant Pease,* for appellants.

*Charles F. Diesen,* for respondent.

CALLOW, J.—The plaintiff, Bonanza Real Estate, Inc., sued the defendants for a real estate commission based on the terms of an exclusive listing agreement covering the sale of their residence. The defendants appeal from a judgment on the verdict of a six-man jury in favor of the plaintiff.

On November 10, 1970, the defendants signed an exclusive listing agreement with John L. Scott, Inc. for the sale of their residence located in Kirkland, Washington. The property was listed for $22,950. The agreement which was to expire at midnight on February 10, 1971, read, in part, as follows:

If (1) said agent procures a purchaser on terms set

forth in this agreement, or any written extension hereof, or on terms acceptable to seller; or (2) is [*sic*] seller directly or indirectly or through any person or entity other than said agent during the term hereof, or any written extension hereof, sells, contracts to sell . . . said property; or (3) if the seller within six (6) months after the expiration of this agreement, or any written extension hereof, should sell, contract to sell . . . said property to any person to whose attention said property was brought through the efforts or services of said agent or on information secured directly or indirectly from or through said agent during the term of this agreement, or any written extension hereof; then said agent shall be conclusively deemed the procuring cause of such sale, contract to sell . . . and seller will pay a commission of 6% of the purchase price. . . .

. . .

It is understood that said agent is a member of the EBA and shall refer this listing to the EBA, who will refer it to all other of its members. . . . EBA and other association members may act as agents in showing, negotiating a sale and selling said property and, in so doing, shall have all rights and privileges that the above agent has under this agreement.

At the bottom of the agreement, there was typed in capital letters, "SUBMIT ALL OFFERS, PLEASE."

This listing agreement was transferred to Michael Sarver, the owner and agent of the plaintiff, Bonanza Real Estate, Inc., which claims its rights under the agreement as a member of the Eastside Broker's Association. The ultimate purchasers of the residence were Merlin D. Young and his wife, Delores. The following chronology collected from the record is helpful to an understanding of the issues:

February 9, 1971—Mr. Sarver first contacted Mrs. Young, the ultimate buyer, and informed her of the availability of the property.

February 10, 1971—Mr. Sarver testified that he personally showed the residence to Mrs. Young in the morning. The defendants dispute this testimony.

February 12, 1971—The defendants spoke with the agent

they had originally dealt with from John Scott realty. Following that conversation, they planned to sell the property themselves by holding an open house on February 20 and 21, 1971.

February 17, 1971—Mrs. Young met with Mr. Sarver and signed an earnest money agreement prepared by Mr. Sarver for the purchase of the property for $18,000.

February 18, 1971—Mr. Sarver spoke with Mrs. Crouch, this being his initial contact with the defendants. He indicated he had a prospect who might be interested in the property but told the defendants nothing further.

February 19, 1971—Mrs. Young met Mrs. Crouch for the first time.

February 20, 1971—Mr. Sarver, at the home of the defendants, met Mr. Crouch for the first time. Mr. Sarver presented Mr. Crouch with the earnest money agreement and revealed Mrs. Young as the prospective purchaser to Mr. Crouch. Mr. Crouch replied that he was not interested in selling the house for $18,000. Later in the day, Mr. Sarver told Mrs. Young that if she wanted the house she would have to "get it on her own."

February 21, 1971—The Youngs agreed with the defendants to purchase the property for $21,250.

February 22, 1971—The defendants and the Youngs executed a new earnest money agreement, drawn at an escrow company office, which reflected $21,250 as the sale price.

The sale was closed on April 26, 1971, and the plaintiff filed suit to recover a commission on June 14, 1971. The defendants filed an answer which denied the allegations of the complaint and by way of affirmative defense alleged that Bonanza Real Estate had no authority to act for John L. Scott, Inc. and, therefore, had failed to join a necessary party. The defendants further alleged that they were served with the summons and complaint while residing out of the state and that the court should award them reasonable attorney's fees and costs if they prevailed. We have set forth the answer of the defendants to show the affirmative defenses pleaded.

Following the presentation of evidence, the trial court instructed the jury as follows:

The plaintiff has the burden of proving each of the following propositions:

1. That the defendants signed an agreement employing John L. Scott, Inc. and other members of the Eastside Brokers Association to act as real estate agents to sell defendants' house in Kirkland.

2. That it was through the efforts of or services of plaintiff or on information secured from plaintiff that the attention of Mr. and Mrs. Young was brought to defendants' house.

3. That the Youngs secured the information concerning defendants' house from plaintiff before midnight, February 10, 1971.

4. That within six months following February 10, 1971 defendants entered into a contract to sell Delores and Merlin Young the property which was the subject of the listing agreement.

If you find from your consideration of the evidence that the plaintiff has sustained plaintiff's burden of proof, your verdict should be for the plaintiff. On the other hand, if plaintiff has not sustained plaintiff's burden of proof, your verdict should be for the defendants.

The defendants assign as error the giving of the above instruction and the failure of the trial court to give the instructions proposed by the defendants on the effect of expiration of the listing agreement, on estoppel and waiver, on "procuring cause," on a broker's duty of good faith and fidelity, and on the term and duration of a brokerage contract, its modification and abandonment.

The challenge is made that the instruction given relating to the plaintiff's burden of proof failed in that it did not require the plaintiff to prove it was the procuring cause of the sale. The instruction is challenged further as having eliminated the defendants' theories of estoppel and waiver. We do not agree with these contentions of the defendants. The instruction followed the terms of the agreement and required that the plaintiff prove that before midnight February 10, 1971, its efforts or services, or information it pro-

vided, made the purchasers aware of the availability of the property for purchase.

The issue concerns language as much as law. The instruction followed the agreement made by the parties themselves and placed on the broker the burden of proving performance of the terms it was to perform. *See Brackett v. Schafer*, 41 Wn.2d 828, 252 P.2d 294 (1953); *Guenther v. Equitable Life Assurance Soc'y of United States*, 23 Wn.2d 65, 159 P.2d 389 (1945); Annot., 51 A.L.R.3d 1149 (1973). The defendants were entitled to no less but may not expect more. The instruction defined "procuring cause" in accordance with the law and the agreement and was not defective in that particular.

■ A real estate broker, under the usual broker's agreement, becomes entitled to his commission when he procures a purchaser who is accepted by the principal and with whom the principal enters into a binding, enforceable contract. *White & Bollard, Inc. v. Goodenow*, 58 Wn.2d 180, 361 P.2d 571 (1961); *Dryden v. Vincent D. Miller, Inc.*, 56 Wn.2d 657, 354 P.2d 900 (1960); *Wesco Realty, Inc. v. Drewry*, 9 Wn. App. 734, 515 P.2d 513 (1973). He must set in motion the series of events that culminated in the sale and, in doing so, accomplish what he undertook under the agreement. *Bauman v. Worley*, 166 Ohio St. 471, 143 N.E.2d 820 (1957); *Mehlberg v. Redlin*, 77 S.D. 586, 96 N.W.2d 399 (1959); *Hayden v. Ashley*, 86 Wash. 653, 150 P. 1147 (1915); *Bagley v. Foley*, 82 Wash. 222, 144 P. 25 (1914). The terms of the sale as ultimately consummated are immaterial if the broker was the procuring cause of the sale itself. *Chamness v. Marquis*, 62 Wn.2d 509, 383 P.2d 886 (1963); *Quadrant Corp. v. Spake*, 8 Wn. App. 162, 504 P.2d 1162 (1973). The instruction was proper in the light of the first assertion.

■ The record discloses that the defendants did not affirmatively plead estoppel or waiver as required by CR 8. The defendants raise these defenses in their opening statement claiming that when Mr. Sarver said, "There is noth-

ing more I can do. If you still want the house, you have to deal with the Crouches yourself," this amounted to an estoppel or a waiver of any claim to a commission. (Mr. Sarver's version was that he was rebuffed by the Crouches and told Mrs. Young that he felt he could not "put the arrangements together with the attitude on the Crouches' part.") This line of defense was immediately objected to by the plaintiff and resisted throughout the trial. Estoppel and waiver must be pleaded with certainty and particularity as affirmative defenses in order to permit evidence to be admitted in support of those defenses. *Mugaas v. Smith,* 33 Wn.2d 429, 206 P.2d 332, 9 A.L.R.2d 846 (1949); *Thys v. Rivard,* 29 Wn.2d 502, 187 P.2d 952 (1947); *Yates v. Dohring,* 24 Wn.2d 877, 168 P.2d 404 (1946). The plaintiff did not fail to maintain its right to have evidence on those defenses excluded. *See Krenov v. West Coast Life Ins. Co.,* 48 Wn.2d 180, 292 P.2d 209 (1956).

However that may be, the testimony which might pertain to these defenses fell short of supporting either defense to an extent requiring instructions thereon. The elements of estoppel have been reiterated in *Hill v. L. W. Weidert Farms, Inc.,* 75 Wn.2d 871, 454 P.2d 220 (1969), *Finch v. Matthews,* 74 Wn.2d 161, 443 P.2d 833 (1968), and other cases. Here the defendants propose that estoppel exists because the statement of the plaintiff was acted on by the defendants and to allow the plaintiff to deny the statement would injure the defendants. We do not understand the statement was meant as the defendants construe it, nor do we find any evidence that the defendants acted on the faith of the statement or in any way other than they would have acted. The burden of proving estoppel is on the party asserting it and is not sustained by a doubtful inference. *State v. Charlton,* 71 Wn.2d 748, 430 P.2d 977 (1967). The waiver of a right is a voluntary and intentional relinquishment of a known right. *Caterpillar Tractor Co. v. Collins Mach. Co.,* 286 F.2d 446 (9th Cir. 1960). Waiver will not be implied on doubtful factors; and for a waiver to be found,

there must be evidence, inconsistent with any other intention, of an intent to relinquish the right. *White Pass Co. v. St. John,* 71 Wn.2d 156, 427 P.2d 398 (1967); *Birkeland v. Corbett,* 51 Wn.2d 554, 320 P.2d 635 (1958).

The defendants urge that the broker is estopped under the decision in *Clarkson v. Wirth,* 4 Wn. App. 401, 481 P.2d 920 (1971). There a broker was acting under an exclusive listing agreement which could be withdrawn by 10 days' written notice. He introduced two prospective purchasers to the principals but the contemplated sale fell apart when the prospective purchasers were unable to achieve the downpayment. The broker, with the listing agreement still executory, then advised the principals to proceed on their own and did nothing further to secure a sale. After another possible sale secured by a different broker did not materialize and, more than 6 months after the advice to proceed on their own, the principals negotiated and consummated a sale to the initial two prospective purchasers plus two others. The broker was held estopped to claim a commission in view of his request for additional time to achieve a sale and his failure thereafter to make any efforts to perform. In addition, the statement to proceed independently in *Clarkson v. Wirth, supra,* was uttered in an executory contractual relationship which indicated a cessation of performance when, under the agreement, performance was the broker's duty and opportunity and could be depended on by the principals. The statement in that context was inconsistent with the claim for commission, the principals were justified in relying on the statement and acts of the broker, the principals changed their position and it would have been unjust not to enforce the broker's own promise upon him. *Corbit v. J.I. Case Co.,* 70 Wn.2d 522, 424 P.2d 290 (1967); *Nelson v. Bailey,* 54 Wn.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959); *Spake v. Elder,* 1 Wn. App. 116, 459 P.2d 820 (1969).

Here the broker had performed, the agreement did not permit further action on its part, the defendants spurned further help and the extension clause of the agreement

covered the contingency of a later sale to parties under circumstances where the broker was the procuring cause of the sale.

Even were we to find that the plaintiff did not guard his position assiduously throughout the trial that estoppel and waiver were not pleaded as required by the rule, which we do not, and that evidence on those defenses was in the record, we would hold, nonetheless, that the evidence that exists with reference to those defenses is insufficient to support instructions to the jury.

The extension, for a period following the termination of the listing agreement, of the liability of the principal for a broker's commission when the broker has brought about the ultimate sale has been upheld in *Clients' Serv., Inc. v. Pupo,* 71 Wn.2d 610, 430 P.2d 552 (1967); *Whiting v. Johnson,* 64 Wn.2d 135, 390 P.2d 985 (1964); *Lloyd Hammerstad, Inc. v. Saunders,* 6 Wn. App. 633, 495 P.2d 349 (1972). These agreements are fully discussed in Annot., 51 A.L.R.3d 1149 (1973). This clause was appropriately covered by the instruction given.

*Marischal v. Winslow Lumber Co.,* 103 Wash. 572, 175 P. 292 (1918), concerned a broker who submitted an offer to his principal and received a telegram confirming the sale at the listed price. Thereafter, before the broker entered into a formal contract with the purchaser, the broker received a new price list advancing the price of the goods. The broker executed the formal contract pursuant to the confirmation. The opinion found the action of the broker to be in good faith and that the broker had not misled the principal. We find such to be the case here where the broker submitted the offer to the principals and gave the principals the full right to decide whether to accept or not.

The defendants infer that when the broker drew an earnest money agreement and inserted $18,000 as the offering price that he breached his duty of good faith to the principal. *Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc.,* 82 Wn.2d 714, 513 P.2d 282 (1973); *Frisell v. Newman,*

71 Wn.2d 520, 429 P.2d 864 (1967). It is true that a broker has a responsibility to exercise reasonable care, skill and judgment in securing for the principal the best bargain possible. *Mersky v. Multiple Listing Bureau*, 73 Wn.2d 225, 437 P.2d 897 (1968). However, there is no showing that because the broker submitted the offer, which was for substantially less than the price set forth in the listing agreement, this indicated anything but that the listing agreement directive to submit all offers was being followed. There is no evidence that the broker was acting contrary to the principal's best interest, that he disclosed any confidential intentions of the principal or that he was endeavoring to secure a sale without regard to achieving the best bargain possible for the principal.

■ 2 Restatement (Second) of Agency § 447 (1958) states:

> An agent whose compensation is conditional upon procuring a transaction on specified terms is not entitled to such compensation if, as a result of his efforts, a transaction is effected on different or modified terms, although the principal thereby benefits.

Comment *b* on this restatement section says:

> *b. Common agreements with brokers.* In the ordinary situation in which the principal promises a broker a commission for finding a purchaser and the asking terms are stated to the broker, the usual interpretation is that the asking terms are intended merely to guide the broker in starting negotiations, and the broker is to have his commission if he produces a customer ready and willing to purchase on the asking terms or on such modified terms as the principal may subsequently accept before the agency is revoked. In such cases, if the promised commission is a lump sum, the broker is entitled to that sum for a sale of which he is the effective cause, although the price paid by the customer is greater or less than the original price the broker was authorized to offer, unless it is found that the parties stated a definite sum only as a method of expressing a percentage of the price expected to be received. If the agreement in terms provides that the compensation is a percentage of the purchase price,

or if the manifestations of the parties are so interpreted, the amount of the commission is based upon the final price agreed upon.

The broker acted within his mandate when he submitted the offer for the lesser price to the principal.

■ A broker is not entitled to a commission on a sale consummated after he has abandoned his agency contract. *Cole v. Carruthers,* 91 Wash. 500, 158 P. 75 (1916).[1] However, the burden is on the defendant-principal to prove abandonment of the agreement by the broker by clear and convincing evidence of statements or conduct inconsistent with the agreement. *Linscomb v. Goodyear Tire & Rubber Co., Inc.,* 199 F.2d 431 (8th Cir. 1952); *Cruse v. Clawson,* 137 Mont. 439, 352 P.2d 989 (1960); *Waters v. Security Life & Annuity Co.,* 144 N.C. 663, 57 S.E. 437 (1907). The question of abandonment of an agreement is ordinarily for the jury (*E.A. Strout Realty Agency, Inc. v. Wooster,* 118 Vt. 66, 99 A.2d 689 (1953); *Houston v. H.G. Wolff & Son Inv. Co.,* 94 Colo. 73, 28 P.2d 255 (1933); Annot., 46 A.L.R.2d 848, 885 (1956)), but, in this case, the evidence presented by the defendant is equivocal and indecisive, more susceptible to the interpretation that the broker believed the principal would no longer deal through him and encouraging the prospective purchaser to proceed than that the broker was giving up his position under the contract.

Finally, it is suggested that the agent for John Scott realty encouraged the principals to sell the property on their own and thus modified the contract. While it is true that a written agreement may be modified by the subsequent agreement of the parties, *Henderson v. Bardahl Int'l Corp.,* 72 Wn.2d 109, 431 P.2d 961 (1967); nothing in the record supports a claim that it was the intent of the bro-

[1]The term "abandonment" has various connotations when used in relation to personal or real property or to contracts. When opinions refer to the unilateral "abandonment" of a contract, they often allude to breach; and when they touch upon bilateral or mutual "abandonment" of a contract, they often have in mind rescission. *See Ferris v. Blumhardt,* 48 Wn.2d 395, 293 P.2d 935 (1956); *In re Estate of Lyman,* 7 Wn. App. 945, 503 P.2d 1127 (1972).

kers to modify their rights under the listing agreement or to change their positions.

The defendants do not urge that the plaintiff was not the procuring cause of the sale. Rather the thrust of their argument is that the broker's words and acts constituted an estoppel, a waiver, a modification, an abandonment or a breach of obligation by the broker. We concur with the trial court that the words and acts of the broker in the context in which they took place did not establish those defenses. The defenses raised were either inadequately supported by the evidence to justify a specific instruction or were covered by the instructions given.

The listing agreement provided for the award of attorneys' fees if legal action was necessary. A fee of $500 will be allowed together with taxable costs. *Ranta v. German*, 1 Wn. App. 104, 459 P.2d 961 (1969).

The judgment is affirmed.

HOROWITZ and WILLIAMS, JJ., concur.