## MULLER v. ROSENBLATH et al.

(Supreme Court, Appellate Division, Second Department.   June 27, 1913.)

1. FRAUD (§ 58*)—EVIDENCE—SUFFICIENCY.

In an action for fraud based on the fraudulent insertion by the mortgagee of a provision in the mortgage executed by plaintiff, evidence *held* to sustain a verdict for plaintiff.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 55–59; Dec. Dig. § 58.*]

2. FRAUD (§ 9*)—ACTS CONSTITUTING.

Where a vendor through his broker, and with his acquiescence, falsely represented to the purchaser, who was blind, the contents of a purchase-money mortgage containing a stipulation materially variant from the stipulation of the contract of sale, the purchaser damaged by. the fraud could sue therefor.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 8; Dec. Dig. § 9.*]

3. FRAUD (§ 22*)—LIABILITY—NEGLIGENCE OF PERSON DEFRAUDED.

Where a party was guilty of a positive, willful fraud inducing the adverse party to act thereon, and execute an instrument, the fact that the adverse party was guilty of negligence in executing the paper without further inquiry as to its contents did not deprive him of the right to sue for the fraud.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 19–23; Dec. Dig. § 22.*]

4. FRAUD (§ 60*)—DAMAGES.

Where a vendor who contracted to sell real estate and take a mortgage to secure the price, payable in installments during a period of about 12 years, fraudulently inserted in the mortgage a stipulation maturing the debt on a sale by the purchaser of the premises, the purchaser could, when making a sale, remove the incumbrance, and thereby satisfy his customer, and recover from the vendor the expenses necessarily incurred.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 65; Dec. Dig. § 60.*]

Appeal from Trial Term, Kings County.

Action by John J. Muller against Daniel Rosenblath and another. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal.   Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and PUTNAM, JJ.

Louis J. Halbert, of Brooklyn, for appellants.

Alvah W. Burlingame, Jr., of Brooklyn, for respondent.

JENKS, P. J.   The defendants appeal from a judgment against them for fraud.   In 1908 they sold realty to the plaintiff.   The contract therefor required his execution of a second and purchase-money

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mortgage payable in installments of $100 or more at the interest periods. Some time after his purchase the plaintiff made a contract with a realty company for exchange of the said realty ·as incumbered for realty owned by that company. His evidence is that the search incident to such exchange first revealed to him that the said purchase-money mortgage provided that, if he sold the realty, that mortgage would become instantly due and payable. He testifies that, therefore, he could not perform the contract of exchange, but he was compelled to seek reformation thereof, and incident thereto to raise the money to pay off the said purchase-money mortgage, and to substitute another and a satisfactory obligation. The damages recovered represent the expenses of such substitution. The evidence adduced by the plaintiff is that, when he executed the said purchase-money mortgage, he was accompanied by his wife. He was and is totally blind. He testifies finally that upon that occasion neither he nor his wife asked about the contents of the mortgage, but that Mr. Hald read over the mortgage to him, but not the provision in question; that neither then or theretofore was there any agreement for such a provision or even any discussion of it; that after such reading the mortgage was laid upon the table and he was led to the table to execute it. He was corroborated by his wife, who had never had any experience in buying or selling property theretofore, and who testifies that "there was a discussion as to the second mortgage running for twelve years." The defendants were present on this occasion. Mr. Hald, called by the defendant, testifies that theretofore and in the plaintiff's house he had explained to plaintiff and to his wife the contemplated provision for immediate payment of the mortgage; that on the day first set for closing title the plaintiff consented to the insertion of the provision; that he then read the clause to the plaintiff and to his wife; that the closing was thereafter adjourned; that on the adjourned day he read the clause to the plaintiff and to his wife and explained it; and that his own first knowledge as to the proposed insertion of the provision was a communication from the defendant D. Rosenblath. Mr. Schinzel, an attorney who was present to represent the defendants, testifies that he heard the plaintiff speak about the clause in general conversation; that Mr. Hald said that "the mortgage contained a clause not in the original contract"; that this clause was agreed upon by plaintiff, Mr. Hald, and Mr. Rosenblath; that plaintiff said he was satisfied, as he bought this realty for an investment and did not expect to sell it, "especially because of my condition"; that such expression was used on the two different days, and that on closing day Mr. Hald said that he represented the plaintiff. He further testifies that the clause was in the mortgage when executed, but that it was inserted after the mortgage was drawn and about 10 days before the day first set for closing the title. The defendant D. Rosenblath testifies that, when the title was closed, Mr. Hald read the mortgage papers and the plaintiff said it was "all right"; that he would never sell the property but would keep it as long as he lived; that this change had been made after a previous conversation between the plaintiff and him, and that plaintiff had said that he had left everything to Hald, who was "his man."

The other defendant corroborates him and Mr. Hald as to the occurrences on the day of closing.

[1, 2] It is insisted that the motion to set aside the verdict as contrary to the evidence and the law should have prevailed. And it is contended that Mr. Hald was the representative of the plaintiff. The learned court charged the jury that if the plaintiff put his matters into the hands of Mr. Hald voluntarily and to represent him, and if under such circumstances Mr. Hald assented to this change, and if the defendants knew that Mr. Hald was acting for the plaintiff, there was no fraud. The verdict indicates that the jury concluded that Mr. Hald did not represent the plaintiff. I think that such finding was not contrary to the evidence. The plaintiff testifies that Mr. Hald, a real estate broker, came to him with the offer of the property of the defendants, and said that, if he could effect a sale, he could gain $300 commission; that thereafter he brought the defendants to plaintiff's house; and that as a result Mr. Hald brought the contract to him for execution. The plaintiff characterizes Mr. Hald as "the man selling the property for Mr. Rosenblath." The plaintiff paid the part of the cash consideration called for to Mr. Hald, who signed in the name of "The Warneke Company, a Corporation, per Chas. B. Hald." Mr. Hald testifies that plaintiff told him to have the search of the title made by the United States Title Company, which was done; _hat he was not paid by plaintiff, but the defendant paid his broker's commission, but that he attempted to represent the plaintiff at the closing day because the plaintiff gave him the search. Mr. Rosenblath testifies that he paid Mr. Hald his commission. The plaintiff testifies that he had no one "there to look out that I did not pay too much for the property," but that he trusted to the honesty of all to give him "a square deal." I think that verdict cannot be disturbed. If the jury accepted the version of the plaintiff and of his wife, they could have found that contrary to the specific terms of the contract, and without even the knowledge of the plaintiff this clause was inserted in the mortgage, that the mortgage was read by Mr. Hald to the plaintiff, with omission and without mention of his clause, and was then presented to him for execution as if in conformity to the contract. If so, then, in the presence of the defendants and with the countenance of the defendants, Mr. Hald, the broker of defendants, made a misrepresentation as to the contents of the mortgage to the plaintiff and presented the mortgage to the plaintiff as that called for by the contract, well knowing that the variance between contract and instrument was material. Thus a fraud was worked, and this action lies. Smith v. Ryan, 191 N. Y. 452–457, 84 N. E. 402, 19 L. R. A. (N. S.) 461, 123 Am. St. Rep. 609, 14 Ann. Cas. 505, citing inter alia Shulter's Case, 12 Coke, 90, where Shulter was blind and the deed was read falsely by a scrivener.

[3] Our attention is called to the refusal, under exception, of the learned court to charge as follows:

"I ask your honor to charge that if the jury find that the plaintiff signed this paper without making any inquiry as to its contents as a matter of law he was guilty of negligence."

If the jury found that the defendants were guilty of a "positive, willful wrong or fraud," negligence on the part of the plaintiff was not a bar to relief. In Wilcox v. American Tel. & Tel. Co., 176 N. Y. 115, 68 N. E. 153, 98 Am. St. Rep. 650, Cullen, J., writing for the court, says:

"The ground on which the learned trial judge disposed of the case, as appears in the opinion rendered by him upon denying the motion for new trial, was that the negligence of the plaintiff in failing to read the paper which he signed precluded him from attacking its validity. We think no such rule of law prevails in this state, though there may be dicta in the text-books and decisions in other jurisdictions to that effect. It was expressly repudiated by this court in Albany City Savings Institution v. Burdick, 87 N. Y. 40, where Judge Earl said: 'It is certainly not just that one who has perpetrated a fraud should be permitted to say to the party defrauded when he demands relief that he ought not to have believed or trusted him. Where one sues another for negligence, his own negligence contributing to the injury will constitute a defense to the action; but, where one sues another for a positive, willful wrong or fraud, negligence by which the party injured exposed himself to the wrong or fraud will not bar relief.' See, also, Welles v. Yates, 44 N. Y. 525; Smith v. Smith, 134 N. Y. 62 [31 N. E. 258, 30 Am. St. Rep. 617]."

In another part of his charge the learned court in answer to a request for an instruction that, if the plaintiff could by ordinary diligence have made inquiry and ascertained the falsity of the alleged misrepresentations, he cannot recover, said:

"If this man had his eyes, I would hold him by the papers he executed on that date; but the fact he did not have his eyes is what makes it a real question of fact for the jury."

I think that the learned court stated the rule too harshly to the plaintiff. Even if the plaintiff could have read the mortgage and did not, and that omission with the other circumstances constituted negligence, in that he should not have relied upon Hald (if Hald was not his representative), nevertheless his negligence would not have defeated his right to relief if the defendants were guilty of positive, willful fraud. Authority supra.

[4] I cannot say that the verdict was excessive. The plaintiff intended to take the property incumbered inter alia with a mortgage with a life of about 12 years and supposed that he had done so, but when he came to perform the contract for exchange thereof to the realty company, which contemplated this incumbrance, he could not, because the mortgage, instead of capable of existence for a considerable period, became immediately due. Therefore he had to remove the incumbrance and satisfy the realty company. His testimony is that he paid out $500 for that purpose. He is corroborated by the person who labored for him. There is testimony that the outlay was fair and proper. There was counter evidence that the charge made against the plaintiff for such service was too great, so that there was a question for the jury. The court instructed them properly:

"He could not voluntarily increase the damages to the defendants by paying more than he ought to pay, but if the defendants committed a fraud, and if this loss grew naturally out of it, and if he did the best he could to

reduce the amount of the damages, he is entitled to indemnity from the defendants."

I recommend affirmance of the judgment and the order, with costs. All concur.