[No. 24797. *En Banc.* June 18, 1934.]

HENRY PERRY et al., *Respondents,* v. CONTINENTAL INSURANCE COMPANY, *Appellant.*[1]

*Clarke & Clarke,* for appellant.
*J. E. Stewart,* for respondents.

MILLARD, J.—Rose M. Bunch Perry, who resided in Grays Harbor county, owned a dwelling house on Guemes Island, about one and one-half miles north of Anacortes. On June 30, 1931, while on a visit to the island for the purpose of having the house repaired, she called at the office of defendant insurance company's agents and made a signed, written application for a policy of fire insurance, expiring June 30, 1934, to cover that dwelling. The policy was issued and mailed to her at Grays Harbor county two or three weeks afterward. A copy of the written application

[1]Reported in 33 P. (2d) 661.

was attached to the policy. The application contained the following statement and warranty:

"Have you ever had a loss by fire? No. . . . The undersigned applicant hereby warrants that each and all of the foregoing answers are true and correct, and agrees that said application shall constitute a part of the policy of insurance hereinabove applied for. (Signed) Rose M. Bunch Perry, Applicant."

The policy, to which the application was attached, provided:

"If an application, survey, plan or description of property be referred to in this policy it shall be a part of this contract and a warranty by the insured. . . .

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The dwelling house was totally destroyed by fire August 3, 1932. The policy of insurance, with the application attached thereto, was continuously in the possession of Mrs. Perry for approximately one year, that is, from three weeks after the date of issuance of the policy to the date of the fire. The insurer denied liability, and rejected the claim of the insured for payment.

An action was commenced by the insured and her husband on the policy. Trial of the cause to a jury resulted in a verdict in favor of the plaintiffs for the face of the policy. Motions for judgment notwithstanding the verdict and for a new trial having been overruled, defendant appealed from the judgment entered on the verdict.

Appellant contends on appeal, as it urged on trial of

the cause, that it appears, as a matter of law, from the undisputed evidence that the respondent, in making her written application, made a false statement with intent to deceive the appellant, therefore recovery on the policy is barred.

Respondent admitted in her pleadings and testified at the trial that, although the application for the insurance contained the statement that she had never had a loss by fire, she suffered a previous fire loss of a house and contents in Grays Harbor county; that, on account of that fire, she collected insurance in the amount of forty-five hundred dollars. In explanation of the untrue statement in her application, she testified that she told appellant's agent that she never had a fire in Anacortes, but that she had suffered one in Grays Harbor county; and that she did not read the written application when she signed it. Appellant's agent testified that respondent, when asked the question as to any previous loss, answered "No," that "she said she didn't have any fire, as far as I know."

In *Hayes v. Automobile Insurance Exchange*, 126 Wash. 487, 218 Pac. 252, the insured made false statements that the automobile he sought to insure had not been in a wreck, that no insurance had been cancelled or refused, and that there was no incumbrance on the automobile. On appeal, we reversed the judgment in favor of the plaintiff for fire damage to the car. We said:

"Whether he read it or not is immaterial. It was his duty to read it, and the law says that he did read it. It showed statements which he knew were untrue and without which he could not have obtained the insurance. It becomes immaterial whether or not originally in the application the blanks were filled in by the appellant's agent without the respondent's knowledge; in effect, they were the respondent's own statements when he received the policy containing the instruction

'Read your policy' and retained it. Those cases holding the company responsible for false statements written by its agent without the assured's knowledge do not go to the extent of relieving the assured when he has not acted in good faith, and good faith is negatived here by the respondent's failure to call attention to the falsities when they appeared in the body of the policy itself.''

The cause was reheard *En Banc*. In affirming the Departmental decision (129 Wash. 202, 224 Pac. 594), we said:

''Whether the application was filled out by the insurance company's agent becomes immaterial, for the respondent knew that the statements made therein were not based upon any facts detailed by him, and when he accepted the policy and is charged with having read it, he then, in legal effect, made for the first time the false statements with knowledge of their falsity, and the fact that they appeared there as a result of the agent's failure to inquire the facts of him does not make them any the less his own misstatements.

''The case falls squarely within the rule announced in *Day v. St. Paul Fire & Marine Ins. Co.*, 111 Wash. 49, 189 Pac. 95, for here, as there, the assured accepted a policy knowing that it contained false warranties, and here, as there, his effort to take advantage of § 7078, Rem. Comp. Stat. [P. C. § 2941], went only to the extent of an assertion that he had actually no intention to deceive; in the *Day* case the testimony by the assured being that he did not intend to deceive, and here merely that he did not read the policy. Section 7078, by its terms, relieves the assured from the effect of false statements made only in 'the negotiations of a contract of policy of insurance,' and there is considerable question whether that section applies to false representations or warranties made in the policy itself; but assuming that it applies to the policy itself, still the rule which we have announced is applicable.''

The respondent may not repudiate her signed application for insurance. Knowing of the misstatements of

the agent—she so testified—she signed the application without correction. She will not now be heard to say that, by her representation, she did not intend to deceive the appellant or that the agent misunderstood her or wrote false answers to the questions. She can not escape the duty of reading the application. There is no showing that she was unable to read or understand the language of the contract. There was no relation of trust or confidence between the respondent and the appellant. No artifice was employed to obtain her signature to the application. Nothing was done to prevent her from reading the application.

It is the general rule, and the same is applicable in the case at bar, that a party to a contract or representation to which he has affixed his signature will not be permitted to urge that he did not read it and that he was ignorant of its contents, and supposed them to conform to what he had agreed with or represented to the adverse party or his agent. *Hubenthal v. Spokane & Inland R. Co.*, 43 Wash. 677, 86 Pac. 955. The respondent accepted the policy one year prior to the destruction of the dwelling. She is charged with having read the policy and the application (which she knew, when she signed same, contained misstatements) attached thereto. She then knew—she is charged with knowledge—that the statement respecting previous loss by fire was false. The statement was a material representation, as it was one that would influence a prudent insurer in determining whether to accept the risk. We hold that every fact which is untruly stated must be regarded as material within the statute providing that

"No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be

deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive. If any breach of a warranty or condition in any contract or policy of insurance shall occur prior to a loss under such policy, such breach shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of such loss under such contract or policy." Rem. Rev. Stat., § 7078,

if the insurer's knowledge or ignorance thereof would naturally influence the insurer's judgment in making the contract. The admittedly untrue statement over the respondent's signature was a representation that would influence the insurer's judgment in making the contract.

"We have gone far in maintaining, as a question of fact, the intent accompanying false and fraudulent representations, and have allowed to be submitted to the jury for its determination the question of intent where there has been very slight proof that the applicant for insurance might have had no idea of procuring the policy by misrepresentations, but the rule should not be so far extended as to include a case such as this and allow insurance to be enforced which was not procurable had the truth been told, where it was issued relying upon fraudulent statements and the proof of honest intent consists merely in the applicant's bare affirmation that his intent was honest. The proof of the making of false and fraudulent representations raises a presumption of dishonest motive, which must be overcome by evidence establishing an honest motive." *Day v. St. Paul Fire & Marine Ins. Co.,* 111 Wash. 49, 189 Pac. 95.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

MITCHELL, MAIN, BLAKE, STEINERT, and GERAGHTY, JJ., concur.

BEALS, C. J., concurs in the result.

TOLMAN, J. (dissenting)—In my opinion, the majority has improperly construed our statute and, also, the case of *Hayes v. Automobile Insurance Exchange,* 126 Wash. 487, 218 Pac. 252, and 129 Wash. 202, 224 Pac. 594.

The statute reads:

"No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive. If any breach of a warranty or condition in any contract or policy of insurance shall occur prior to a loss under such policy, such breach shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of such loss under such contract or policy." Rem. Rev. Stat., § 7078.

If written as well as oral warranties are to be deemed immaterial unless made with intent to deceive, it is obvious that the question of intent becomes one of fact, to be determined by the trier of fact in all cases where reasonable minds may differ upon the question. The question can be one of law only in those cases where the facts are so far undisputed that all reasonable minds must necessarily reach the same conclusion.

The *Hayes* case, upon which the majority chiefly relies, was of the last named type. There, it was an admitted and fully demonstrated fact that the policy would not have been written if the truth had been disclosed, and as the policy could only be procured by deceit, reasonable minds might not differ as to the intent to deceive.

The majority has quoted the broad rule of the *Hayes* case without the qualifying conditions which the writer carefully inserted in each of the opinions.

In the Departmental opinion, 126 Wash. 487, it is said:

"Nor does the case fall within that other rule that the assured is not responsible where the company's agent has advised him that the statements are proper ones to make. In *Eaton v. National Casualty Co.*, 122 Wash. 477, 210 Pac. 779, the agent incorrectly recorded truthful answers given by the assured, and, moreover, the agent advised the assured that correct answers were not necessary under the circumstances, and the assured then accepted the policy, relying on the agent's advice. In that case the company would not be held to have been misled, and there was, furthermore, a clear lack of intent on the part of the assured to deceive it. These facts distinguish the case from the one at bar."

And, in the *En Banc* opinion, 129 Wash. 202, it is said:

"The decision of this case is not in conflict with prior decisons relating to this same subject-matter, for in all of them in which recovery upon a policy has been permitted there was positive proof of facts and circumstances from which the triers of the fact could rightfully determine that the assured had actually no intent to deceive; either that the insurance company knew the real condition of affairs, or that the assured, through a legitimate oversight, or for some reason of that nature, had neglected to state the facts as they really existed. But here the assured made no such explanation and his reason for asserting that he had no intention to deceive is that he had never read the policy. This amounts to no more than a claim that he is not bound by a policy which he did not read, and which, as we have shown, is not the rule of law applicable to such contracts."

In the case at bar, there was ample evidence properly admitted from which the jury could, and did, find that the assured had actually no intent to deceive, and it is quite apparent that, had the application disclosed

the full truth, still the policy might very well have been written. So that, even under the *Hayes* case, the verdict of the jury should be upheld.

In a long line of cases, following the enactment of the statute in 1915, we have held that this question is a question of fact, and here, for the first time, we have departed from our long established rule, thus effectually repealing the statute. A departure which, to my mind, is wholly unjustified so long as the jury system prevails.

To cite cases seems superfluous, but, among others, see: *Robbins v. Milwaukee Mechanics' Insurance Co.*, 102 Wash. 539, 173 Pac. 634; *Turner v. American Casualty Co.*, 69 Wash. 154, 124 Pac. 486; *Brigham v. Mutual Life Insurance Co.*, 95 Wash. 196, 163 Pac. 380; *Ashey v. New York Life Insurance Co.*, 102 Wash. 27, 172 Pac. 887; *Eaton v. National Casualty Co.*, 122 Wash. 477, 210 Pac. 779, and the many cases cited by the annotator of Remington's Revised Statutes following the section quoted.

For the reasons given, I dissent.

HOLCOMB, J., concurs with TOLMAN, J.