[No. 35994.    Department One.    February 15. 1962.]

HAROLD TIMM *et al., Respondents,* v. FORREST E. HART *et al.,*
*Appellants.**

Dellwo, Rudolf & Grant, for appellants.

Lowell D. Sperline, for respondents.

* Reported in 368 P. (2d) 715.

HILL, J.—We are here concerned with whether the plaintiffs, Harold and Reo Timm and their respective wives, or the defendants, Forrest E. Hart and his wife, have the right to possession of certain real property.

The defendants, in effect, seek by their cross complaint to have the deed, which they had given to the plaintiffs and under which the plaintiffs claim the right of possession, set aside. If the deed were set aside, the defendants—and not the plaintiffs—would have title to the property and the defendants would be rightfully in possession of the portion thereof from which the plaintiffs seek to oust them.

Briefly stated, the circumstances were that the plaintiffs had a mortgage on certain orchard property owned by the defendants, also a chattel mortgage on certain sprinkler equipment and personal property used in connection with the orchard. They had also acquired, by assignment, another chattel mortgage given by the defendants, which covered other equipment used in the orchard.

An action was commenced to foreclose the real-property mortgage and the chattel mortgage, which had been given to the plaintiffs. A decree of foreclosure was entered on the real-property mortgage; but before the sheriff's sale, the attorney for the plaintiffs discovered certain defects in the description of the property which, in his judgment, made a second foreclosure proceeding necessary. No sheriff's sale was held under the foreclosure decree.

To obviate the necessity of a second foreclosure, it was proposed that the defendants execute a deed to the plaintiffs; and that the defendants, in return, would be permitted to occupy a house on the mortgaged property for a year and have an option, during that year, to repurchase the property.

After some negotiations, an agreement was reached. The plaintiffs contend that the "CONTRACT AND AGREEMENT," executed by the defendants Sunday morning, February 7, 1959, together with other instruments implementing the contract, evidence the agreement reached by the parties. The defendants agree, with one very material exception.

Six documents were signed by the defendants the morning of February 7, 1959:

A. The "CONTRACT AND AGREEMENT" (two typewritten pages), which purported to state the complete agreement between the plaintiffs and the defendants. (The other five documents were intended to implement it.) The contract provided *inter alia*: That the defendants were to be permitted to live in the house (which they were then occupying) on the mortgaged premises, rent free, until February 20, 1960, and they were to have an option to purchase the mortgaged real and personal property until that date. It was further provided that the plaintiffs were to pay the defendant husband the sum of $350 upon the execution of the agreement. (This last is the material exception to which we have referred; the defendants insist this was to have been $1,000.)

B. A "DEED IN LIEU OF FORECLOSURE" (two typewritten pages), from the defendants to the plaintiffs, which covered the mortgaged real property. This deed recited that it was

" . . . an absolute conveyance of title, in effect as well as in form, and is not intended as a mortgage, trust conveyance, or security of any kind. The consideration therefor is the sum of ten and no/100 dollars ($10.00), and full release of all debts and obligations heretofore existing on account of that certain mortgage on said premises, recorded in Book 93 of Mortgages, at page 482, under Auditors file No. 121725, records of said County. This deed completely satisfies said mortgage indebtedness and terminates this mortgage and the note secured thereby, and any effect thereof in all respects."

C. An "AFFIDAVIT" (two typewritten pages) by the defendants which related to the deed (B, *supra*), and stated that it was executed by them in good faith as an absolute conveyance and not as a mortgage or trust conveyance, or security of any kind.

D. A "BILL OF SALE" (one typewritten page) by the defendant Forrest E. Hart to the plaintiffs, which described the equipment and other personal property covered by the two chattel mortgages to which we have referred.

E. An "OPTION TO PURCHASE" (three typewritten pages), whereby the plaintiffs gave to the defendants an option to purchase the real and personal property covered by the deed (B) and the bill of sale (D) at any time before February 20, 1960, for an amount to be computed as provided in the option.

F. A quitclaim deed (not in evidence) from the defendants to the plaintiffs, covering approximately three acres, which had been omitted from the mortgage and on which was located a well essential to the irrigation of the orchard, and which also included an easement for the use of another well.

These documents, together with three or four carbon copies clipped to each, were brought to the home of the defendants on the morning of February 7, 1959, by the attorney for the plaintiffs. They were admittedly signed at that time by the defendants under circumstances to which we will hereafter refer.

February 8, 1959, an error having been discovered in the description in the quitclaim deed (F), conveying the three-acre tract, the attorney for the plaintiffs prepared a substitute deed and "voided" the one executed the preceding day. This substitute deed was taken to the home of the defendants and there signed by them.

Later that day, after the plaintiffs had executed the contract (A) and the option (E) and initialed the changes previously initialed by the defendants in the documents, it is claimed (by the plaintiffs) that copies of all documents and a check for $350 were delivered to the defendant husband. It is conceded that within a short time he returned them, or at least the check, and insisted that the "deal was off" because the check was not for $1,000.

The defendants' version is that defendant husband never accepted either the documents or the check and that as soon as he saw that the check was only for $350 he announced that the "deal was off."

It is conceded also that he told the plaintiffs not to record the deeds.

The plaintiffs did record the deeds and have proceeded on the theory that the agreement was in effect and that they had title under the deeds and bill of sale. In March of 1960, they demanded possession of the premises occupied by the defendants; and in April, 1960, commenced this action to regain possession. As we have indicated, the defendants seek to vitiate the entire transaction because they insist that it had been agreed that they were to receive $1,000.

The trial court gave effect to the agreement and the "DEED IN LIEU OF FORECLOSURE" and ordered that the plaintiffs be put in possession of the premises occupied by the the defendants. This appeal followed. (Present counsel have represented the defendants only on this appeal; in the trial court the case was presented by the defendant Forrest E. Hart.)

■ The law is not in dispute. Both parties recognize the general rule laid down in such cases as *Lake Air, Inc. v. Duffy* (1953), 42 Wn. (2d) 478, 256 P. (2d) 301; *Perry v. Continental Ins. Co.* (1934), 178 Wash. 24, 33 P. (2d) 661; *Johnston v. Spokane & Inland Empire Co.* (1919), 104 Wash. 562, 177 Pac. 810: That a party to a contract to which he has affixed his signature will not be permitted to urge that he has not read it, and that he was ignorant of its contents and supposed them to conform to what he had agreed.

Nor is it disputed that there are many exceptions to that rule and that a different agreement than that contained in the writing signed by the parties may be established by parol evidence where there has been fraud, mutual mistake, or mistake by one party and inequitable conduct by the other. *Gammel v. Diethelm* (1962), *ante* p. 504, 368 P. (2d) 718; *Kaufmann v. Woodard* (1945), 24 Wn. (2d) 264, 163 P. (2d) 606.

■ The defendants (as appellants) concede quite frankly that their right to prevail depends upon their being able to establish, by positive and convincing evidence, the circumstances on which they rely to bring them within

the exceptions to the general rule, *i.e.*, that there were circumstances which excused the defendants from reading the contract which they signed.

There was testimony that the attorney, who had prepared the six documents and brought them to the home of the defendants for signature, was in a hurry; that there was not adequate time to read them; and, most important of all, there was testimony that the defendant husband inquired if the provision for a thousand dollars was in the contract and was assured by the attorney that it was, and that they signed the documents in reliance on that representation.

The attorney denied making such a representation and insisted that he urged the defendants to read the documents, and testified further that the defendant husband suggested a change which was made in the option to purchase.

The trial court, by its findings, accepted the version of the attorney.

To take this case out of the now familiar rule that the findings of the trial court are conclusive, if supported by substantial evidence (see *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183; *Stringfellow v. Stringfellow* (1960), 56 Wn. (2d) 957, 350 P. (2d) 1003, 353 P. (2d) 671, and cases cited), the defendants assert that the trial court was actually satisfied that their version of the transaction was correct, but considered itself bound to enter the judgment for the plaintiffs by such cases as *Johnston v. Spokane & Inland Empire Co.* supra, and *Perry v. Continental Ins. Co., supra.*

The record does not substantiate that assertion; instead it indicates that the trial court was fully appreciative of the circumstances and conditions, which present exceptions to the rule laid down in the *Johnston* and *Perry* cases, and the specific findings and the oral decision show clearly its conclusion that the facts necessary to bring this case within any of the exceptions indicated, were not established. The trial court specifically found that there

was no fraud, duress, or coercion involved in the negotiations or the execution of the instruments and that the defendants read the documents presented to them on February 7, 1959. The trial court, in its opinion, says:

"Now, the evidence is that Mr. Doty [the attorney] was at the Hart home when these papers were signed. The evidence would indicate that he was there at least 20 minutes. That was quite a number of pages, that's true. But, the point that appears to the Court is the fact that I think anyone interested in these contracts and signing them, at least, would, in that length of time, have had the opportunity to glance through them to see how much he was going to be paid, and that is right on the front page of the contract and agreement.

"There is some talk about these contracts having been taken apart. But, there is no evidence that this isn't the contract that the defendant signed. And it appears to the Court that *the defendant has not proven his cross complaints by a preponderance of the evidence.* And it appears to the Court that the plaintiffs are entitled to judgment on their complaint, and they are entitled to be placed in possession of property and for their costs in the action." (Italics ours.)

This clearly implied that the trial court recognized that if the defendants had proved the allegations of their cross complaint, they would have been entitled to the relief requested, but concluded that "the defendant has not proven his cross complaints by a preponderance of the evidence." This is, perhaps, a euphemistic way of expressing disbelief of certain testimony. When the defendants failed to meet the "preponderance of the evidence" test, they were not entitled to recover. We have but recently indicated that something stronger than a preponderance of the evidence is required in such a case. *Gammel v. Diethelm, supra.*

Judgment affirmed.

WEAVER, ROSELLINI, OTT, and FOSTER, JJ., concur.