[No. 36915.    Department One.    June 25, 1964.]

ROBERT N. GAINES, *Respondent*, v. JAMES F. JORDAN et al., *Appellants.**

*Mason & Foley*, by *Fred Mason*, for appellants.
*McMullen, Snider & McMullen*, for respondent.

HUNTER, J.—On February 16, 1961, the plaintiff, Robert Gaines, executed a written lease to the defendant, James F. Jordan. The subject matter of the lease was a service station owned by the plaintiff. The lease provides for a 5-year term from April 1, 1961, and the lessee has the option to

*Reported in 393 P. (2d) 629.

renew. The stated rental is $100 per month plus one cent per gallon of the gasoline sold, subject to further provisions which are in dispute. Named defendants in this action included the lessee's wife and the parties in possession of the premises, but, hereafter, James F. Jordan will be considered as the sole defendant.

The plaintiff (respondent) and defendant (appellant) had been friends and social acquaintances for many years prior to the lease transaction. Both were engaged in the gasoline and oil business in the same area. The plaintiff, who is of advanced age, had undergone eye surgery 6 weeks prior to the execution of the lease in question and was unable to read when the document was executed. The parties discussed the terms of the lease and the defendant agreed to reduce the proposed terms to writing. The testimony is conflicting whether two or three documents were prepared before the one finally executed was signed and acknowledged; however, the defendant insists that he read all of the disputed provisions in the lease to the plaintiff. The plaintiff contends that the agreement which was finally executed contains provisions of which he had no knowledge, and that he was misled concerning the contents of the lease by misrepresentations of the defendant. The provisions of the agreement which the plaintiff contends were unknown to him and to which he did not agree are:

"Gallonage rental shall be excluded only by a gasoline price war (retail price drops to two cents above posted tank wagon price). $300.00 total maximum per month rental.

" . . .

"A. It is further covenanted and agreed between the parties hereto that after a total sum of $20,000.00 dollars (twenty thousand) in rental money has been received by the Lessor from Lessee, Lessor shall sell to Lessee for the sum of $10.00 (ten) dollars the above described property a deed or title, and issue a title insurance policy showing title to said premises vested to Lessee free and clear from all encumbrances.

"B. It is further agreed that after the consumation of the above Paragraph A, that said transfer shall in no way alter or terminate the time or the rental agreement here to agreed upon."

A few months after the execution of the lease the defendant did not pay the one cent per gallon, and when questioned, he told the plaintiff that because of a gasoline price war payment was not due. The plaintiff then examined his copy of the agreement and discovered the above-quoted provisions. He contacted his attorney and this action ensued.

The trial court found that as a result of plaintiff's recent eye operation he was incapable of reading the document prepared by the defendant; that the defendant did not prepare the contemplated agreement in accordance with the terms orally agreed upon; that the above-quoted provisions were not a part of the oral agreement; that the defendant misrepresented the contents of the document; and that the plaintiff relied upon the misrepresentations. The trial court entered judgment rescinding the lease. The defendant appeals.

The defendant contends that we cannot invade the sanctity of the written agreement by allowing the plaintiff to urge that he is ignorant of its contents, since he has affixed his signature thereto.

It is the general rule that one who is able to read, and fails to read a contract which he signs, cannot be heard to deny that he has executed the contract. *Timm v. Hart*, 59 Wn. (2d) 538, 368 P. (2d) 715 (1962); *Lake Air, Inc. v. Duffy*, 42 Wn. (2d) 478, 256 P. (2d) 301 (1953). There are exceptions to this rule, however, and in 23 Am. Jur., Fraud and Deceit § 171, it is stated:

"The rule permitting reliance on representations as to the contents of an instrument has been applied where the fraud is perpetrated by misreading the instrument, . . . by writing it down in terms different from those agreed on, the party's signature being obtained without calling his attention to the alteration, and by representing that it has been written in the terms agreed. . . ."

In 37 C.J.S., Fraud § 34(a) note 74(2), the author states:

"So, where defendant misread terms of instrument to plaintiff who was blind, and thereby induced him to sign such instrument, plaintiff could recover for fraud notwith-

standing his failure to procure some one on whom he could rely to read it to him."

See *Miller v. Haney,* 64 Ind. App. 406, 116 N. E. 21 (1917); *Muller v. Rosenblath,* 142 N.Y.S. 602, 157 App. Div. 513 (1913); Annot., 1917F L.R.A. 645.

This exception is consistent with our reasoning in *Oates v. Taylor,* 31 Wn. (2d) 898, 199 P. (2d) 924 (1948), where we said:

"Ordinarily, the duty to disclose a material fact exists only where there is a fiduciary relationship, and not where the parties are dealing at arm's length. However, in *Perkins v. Marsh,* 179 Wash. 362, 37 P. (2d) 689, . . . We there said:

" 'It is true that, in the absence of a duty to speak, silence as to a material fact does not of itself constitute fraud. *Farmers State Bank of Newport v. Lamon,* 132 Wash. 369, 231 Pac. 952, 42 A.L.R. 1072. However, the concealment by one party to a transaction of a material fact within his own knowledge, which it is his duty to disclose, is actual fraud. If appellants intentionally concealed some fact known to them which it was material for respondents to know, that constituted a fraudulent concealment; that is, the concealment of a fact which one is bound to disclose is the equivalent of an indirect representation that such fact does not exist, and differs from a direct false statement only in the mode by which it is made.' "

Also, see, *Rummer v. Throop,* 38 Wn. (2d) 624, 231 P. (2d) 313 (1951).

In the instant case the disputed provisions of the lease were within the knowledge of the defendant and were material facts for the plaintiff to know which the defendant had a duty to disclose to the plaintiff.

The trial judge found as a fact that the disputed provisions in the lease were not read to the plaintiff, and that since he was unable to read because of his eye operation, he relied on the misrepresentations of the defendant who purported to explain the terms of the agreement. These findings of fact, based on substantial evidence, constitute fraud and entitle the injured party to timely rescind the agreement.

The defendant contends the evidence was not clear, cogent and convincing. We disagree. The direct testimony in the record, supporting the trial court's findings, was believed by the trial court and was ample to establish fraud.

We need not consider the remaining contentions raised by the defendant, in view of our disposition of this appeal.

The judgment is affirmed.

OTT, C. J., FINLEY and ROSELLINI, JJ., and EDGERTON, J. Pro Tem., concur.