[No. 1-39729-3. Division Three. October 21, 1969.]

HARRY A. SPAKE *et al., Respondents,* v. JOHN S. ELDER *et al., Appellants.*

*Jack Doty,* for appellants.

*Engst, Phelps & Young* and *Peter G. Young,* for respondents.

GREEN, J.—Defendants, John and Lucille Elder, appeal from a judgment of specific performance of an option to purchase real property.

The record discloses that during the spring of 1966, plaintiff Harry Spake, in order to develop land at Wapato Point on Lake Chelan, requested Kenneth Kingman of Chelan Realty to obtain options to purchase from landowners. Among other things, the development included a golf course. Defendants were the owners of six acres in the middle of the projected golf course.

Kingman approached defendant John Elder for an option to purchase; defendants orally agreed. Thereafter on April 6, 1966, Kingman delivered to defendants a check for $100 and defendants signed an undated, written option. Kingman took the option to his office where subsequently photocopies were made, signatures notarized and the date "April 8, 1966" inserted. On April 8, he delivered one copy to defendants and one copy to plaintiffs. Defendants testified they put the option away without reading it. The plaintiffs set up a file based on an option period commencing April 8, 1966.

The option provided:

> We . . . being owners of the property . . . in consideration of . . . $100.00 paid to us by Harry A. Spake, receipt of which is acknowledged, do hereby give . . . the privilege and option to purchase the following described real property . . . for the total agreed

purchase price of $10,000.00 on or before 120 days from the date hereof. Notice of the exercise of this option *may* be given by letter addressed to us at Manson, Washington. *We agree to furnish a policy of title insurance,* showing good title to the real estate . . . *as soon as procurable after delivery of such notice.*

*When this option is exercised we agree to enter into a real estate contract* on the standard Puget Sound Title Insurance form providing for a down payment of $5000.00, of which the above receipted option money shall be a part and the balance of $5000.00 to be payable on April 4, 1967 . . .

In the event that the privilege of purchase herein given is not exercised and the conditions hereof fully performed, within the time provided, by Harry A. Spake . . . the privilege shall thereupon wholly cease. . . . Provided . . . upon payment of an additional sum equal to the sum shown above as consideration, . . . the . . . option . . . shall be extended for a term equal to the original term of this option agreement.

Dated this 8th day of April, 1966.

> s/ John S. Elder
> Owner
> s/ Lucille Elder
> Owner

(Italics ours.)

Similar options on other property within the development area were obtained and later exercised.

On August 1, 1966, Kingman delivered another check for $100 to defendants for an extension of the option. In the presence of his wife, John Elder signed the following document:

> Chelan, Wash.
> August 1, 1966

Receipt is hereby acknowledged of an additional $100 to extend the time of Option to Purchase, *as provided in said agreement, dated April 8, 1966,* between John S. Elder and wife, and Harry A. Spake.

> s/s John S. Elder

(Italics ours.) The evidence is conflicting as to whether or not defendants received a copy of the document. Defendants

admitted they received the $100 and deposited it in their bank account on August 1, 1966.

On December 4, 1966, at plaintiffs' direction, Kingman went to defendants' residence and told John Elder that he was exercising the option on behalf of plaintiffs. Kingman testified his statement was ". . . in plain English and irrevocable." With plaintiffs' prior approval, Kingman thereafter told John Elder that if taking a 50 per cent downpayment would burden defendant tax-wise, it might be better for him to take only 29 per cent down. Defendant volunteered he would just as soon have the lower downpayment. It was mutually understood the terms of the contract to be written would be for $2,500 down, another $2,500 in April 1967, and the balance in June 1967. Defendant told Kingman he was going to use part of the money to buy a mobile home and asked Kingman to find a spot where he might locate it. Although plaintiff told Kingman a check would be available whenever it was needed, defendant did not demand nor did Kingman tender the downpayment. On the same day, Kingman reported to plaintiff that the option had been exercised.

The following morning, December 5, 1966, Kingman ordered a preliminary title report. When the title report was received on December 6, 1966, Kingman immediately telephoned defendants. Defendant Elder said he was buying other property through his attorney who would also handle this deal. As a result, Kingman obtained defendants' approval to have their attorney prepare the contract required under the option. No claim was made that the option was no longer valid or improperly exercised. As a memorandum of the terms of the contract, Kingman prepared a form earnest money receipt and agreement, took it to defendants' attorney on December 7, 1966 and for the first time learned from the attorney that defendants were refusing to honor the option agreement. On December 8, 1966, Kingman presented to defendants, and later to their attorney, a check for $4,800. Acceptance was refused.

Shortly thereafter, plaintiffs commenced this proceeding

seeking specific performance of the option to purchase. Following trial, a judgment for specific performance was entered. This appeal followed. Although defendant disputed some facts, the trial court was entitled to believe the foregoing statement of the facts.

Defendants urge 20 assignments of error directed to the trial court's findings and conclusions. They were directed to (1) the finding that the term of the option commenced April 8, 1966 and the conclusion that defendants are estopped to claim the date of April 6, 1966; (2) the finding that plaintiff orally exercised the option and that such oral exercise was valid; (3) the refusal of the trial court to find the entire transaction had to be completed within the term of the option; and (4) there was no unconditional exercise of the option.

First, defendants argue that the term of the option commenced on April 6, 1966, the date of signing, notwithstanding the insertion by Kingman of April 8, 1966 when he notarized defendants' signatures. Upon this premise defendants contend the option expired December 2, 1966. To the contrary, plaintiffs contend the option was properly exercised on the last day, December 4, 1966, and the inserted date of April 8, 1966 is the date on which the option term commenced.

It is undisputed that defendants received a copy of the option containing their signatures and bearing date of April 8, 1966, and on August 1, 1966, defendant Elder, in the presence of his wife, signed a receipt confirming the option date of April 8. On neither occasion did defendants object to the date, April 8. It is of no avail for defendants to claim they did not read the documents, since they are bound to know the content of the documents they signed. *Timm v. Hart*, 59 Wn.2d 538, 368 P.2d 715 (1962); *Perry v. Continental Ins. Co.*, 178 Wash. 24, 33 P.2d 661 (1934).

Plaintiffs set up their option file based on the date of April 8, and in obvious reliance on such date instructed Kingman to exercise the option on the last day, December 4. On the day the option was exercised, defendants did not

object to its timeliness nor had they objected on August 1 to the timeliness of the extension of the term of the option. In fact, defendants voiced a desire to accept a lower downpayment for tax purposes, asked Kingman to look for a mobile homesite on which defendants could relocate and when the title report was available they authorized Kingman to have their attorney prepare the contract required in the option. The first refusal to proceed was expressed by their attorney on December 7, 1966 when Kingman was advised that defendants were refusing to close the deal.

█ The trial court found that defendants were estopped to claim the date of April 6, 1966. With this finding and conclusion we agree. In *Nelson v. Bailey*, 54 Wn.2d 161, 168, 338 P.2d 757, 73 A.L.R.2d 1400 (1959) our Supreme Court said:

> The essential elements of an equitable estoppel as related to the party estopped are: (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act. *Moore v. Dark*, 52 Wn.2d 555, 327 P.2d 429.

Defendants' acts in retaining the option dated April 8, 1966 and signing a receipt confirming that date is inconsistent with a later contention that the date should have been April 6, 1966. The action of plaintiff on the faith of the date written on the option is evident by his recording of the date and the exercise on the last day of the option term. Certainly to allow defendants to contradict or repudiate their acts would result in irreparable injury to plaintiffs. The parties by their conduct adopted and accepted April 8, 1966 as the correct date, and the trial court correctly held defendants estopped from contradicting it.

█ Second, defendants contend the terms of the option to purchase required a written acceptance and even if the option were construed to the contrary, an oral acceptance of an option to purchase real estate is invalid. On this point,

the option states: "Notice of the exercise of this option *may* be given by letter  .  .  .". This language of the option is permissive and does not require written acceptance. The court in *Duprey v. Donahoe,* 52 Wn.2d 129, 323 P.2d 903 (1958) while considering an option to purchase real estate said at 133:

> In the absence of any provision in the option contract with reference to the manner by which an option can be exercised, it is the general rule that any manifestation, either oral or written, indicating an acceptance on the part of the optionee is sufficient. 55 Am. Jur. 507, § 38; 1 Corbin on Contracts, 872, § 264.

This pronouncement is in keeping with the majority rule in other jurisdictions with respect to real estate options. 30 A.L.R.2d 976.

Defendants argue this should not be the rule for the reason that it ignores the doctrine of mutuality of remedy. Our Supreme Court held to the contrary not only by its decision in the *Duprey* case, but also in *Tombari v. Griepp,* 55 Wn.2d 771, 350 P.2d 452 (1960). In the latter, the court found that where an action for specific performance was initiated promptly after the optionor's refusal to perform, the mere commencement of the action satisfied mutuality of remedy. The trial court correctly held as valid the oral acceptance of the option.

■■ Third, defendants contend that under the option agreement the entire transaction had to be concluded within the term of the option. We agree with the trial court that the plain meaning of the agreement requires only that the option be exercised within the option term. Thereafter, the defendants were required to perform by securing title insurance and entering into a real estate contract, at which time the downpayment was to be made by plaintiffs. In *Duprey,* 52 Wn.2d at 135 it was said:

> There is a distinction between an acceptance of an offer to purchase and the closing of a sale, after the option has been exercised. The acceptance of an offer to sell real estate creates a binding obligation on both parties. The closing of the sale thereafter is the fulfillment

of the obligations created by the contract. We conclude that, when the closing date is not definitely fixed in the contract, a reasonable time after acceptance must be allowed to perform.

We believe the option in the instant case is governed by this conclusion.

Last, defendants contend there was no unconditional exercise of the option. With this we cannot agree. Kingman exercised the option and subsequently the parties orally agreed to vary the terms of the final contract. Plaintiffs, however, were at all times ready to perform according to the terms of the original option. The acceptance of the option was unconditional and not conditioned upon any change in the terms. *Duprey v. Donahoe, supra.*

Judgment is affirmed.

EVANS, C. J., and MUNSON, J., concur.