Argued May 5, affirmed May 26, 1971

SPARKS, *Appellant, v.* GREEN, *Respondent.*

485 P2d 400

In Banc

J. J. Murchison, Judge.

*David K. Young*, Portland, argued the cause and filed a brief for appellant.

*Walter H. Evans, Jr.*, Portland, argued the cause for respondent. With him on the brief was William D. Peek, Portland.

TONGUE, J.

This is an action on a promissory note for $7,800, which was referred to in a real estate earnest money agreement as part of the earnest money claimed by plaintiff to be subject to forfeiture as liquidated damages on failure of defendant, as purchaser, to complete the purchase of a house in Seattle from plaintiff.

Plaintiff appeals from a judgment for defendant by the trial court, sitting without a jury, based upon a memorandum opinion to the effect that there was no consideration for the note because the earnest money contract executed by defendant, as purchaser, at the time of execution of the note was not accepted by plaintiff, as seller, and because plaintiff did not clearly establish the intention of the parties to revive the note upon execution by both parties of a subsequent earnest money contract, which also referred to the note.

Defendant admitted that the note bears his signature, but testified that he did not recall signing the note. He also testified that when the original earnest money contract was signed by him, contingent upon approval of his credit, the realtor discussed the problem of securing a loan to finance purchase of the house, including how large a loan he would have to

secure and how much of a down payment, and mentioned the name of Coast Mortgage Co. as a source for such a loan; that he told the realtor that he had an equity in his house in Salt Lake City worth between $7,000 and $8,000; that the realtor then had him sign various documents in blank; that he would have remembered signing a promissory note to the realtor for $7,800 and that the note was not "filled out" when he signed it, but that he thought that he was signing papers for a loan application.

The realtor corroborated at least part of defendant's testimony by testifying that at the time of the execution of the first earnest money contract by defendant on January 25, 1968, he knew that the maximum loan on the house was "around $26,000" and wanted to be sure that defendant had enough money for the down payment and thus "asked him at that time how much money he would put down on the house," saying that "the more the better" in persuading the seller to sell the house for the amount of defendant's offer of $31,250; that defendant told him he had only $200 in cash, but could pay $8,000 when he sold his old house, and that the realtor then "wrote out a note for $7,800 on demand, to cover the down payment." The realtor denied having any documents signed in blank, however.

When, however, defendant's offer of $31,500 was then rejected by plaintiff, defendant told the realtor to destroy the earnest money contract and that he wanted his "money back" and the realtor then tore up the contract, but did not return the check or the note, which had been given to his employer.[1]

---

[1] The realtor also testified that defendant said he wanted his money back and his note, but defendant testified that he did not know of the note until demand was made later for its payment.

Two days later, however, the parties agreed on a price of $32,875 and a new earnest money contract was then prepared and signed by both parties. That contract, like the original one, referred to the receipt of $8,000, in the form of a check for $200 and a note for $7,800 "as earnest money in part payment of the purchase price." The contract also included a provision, in small print, that if the purchaser failed or refused to complete the purchase, "the earnest money shall be forfeited as liquidated damages."

Defendant admitted reading "part" of the earnest money contract before signing it and testified that he was told that "everything was all okay" by the realtor, in whom he then had confidence.[2] He also testified that he was not aware of the words "note for," in small print, in the printed earnest money contract form.

A few weeks later, in early March 1968, defendant was notified by his employer that he was being transferred to Portland. According to the realtor, defendant then called him and said he wanted to "get my $200 back." The realtor then wrote a letter to defendant, dated March 12, 1968, listing various charges, including a claimed commission of $1,643, stating his belief that plaintiff intended to declare a forfeiture of the earnest money, including $200 cash and "your demand note in the amount of $7,800," but stating also his belief that if the charges (including commission) were paid, "the balance of the earnest money would be returned." Defendant then called the realtor, professing

[2] Plaintiff testified that upon arrival in Seattle the realtor came to him, offered assistance in finding a house and later told him that he would try to get the owner of the house to sell it to plaintiff for the amount of his offer.

ignorance of any note. A copy of the note was then sent to him.

The realtor's listing with plaintiff then expired on April 13, 1968. On June 12, 1968, plaintiff closed a sale of the house through another realtor to another purchaser for $33,000 cash. The original realtor then endorsed the $7,800 to plaintiff, who filed this action.

1. Since both the promissory note and the earnest money contract were executed in Washington and since the real property in question is located there, the substantive law of this case is controlled by the law of that state.

Defendant relies upon the Washington case of *Buck v. Equitable Life Assurance Society*, 96 Wash 683, 165 P 878, 879 (1917), as holding that:

"Courts are always open to receive and enforce equitable considerations, and even in cases of unilateral mistake it has been held that a contract would not be enforced when it would be harsh to do so."

Plaintiff has cited no Washington cases to the contrary and we have found none. Indeed, in *Pepper v. Evanson*, 70 Wash 2d 309, 422 P2d 817 (1967), the Washington court also recognized (at pp 821-2) that a unilateral mistake may be a ground to set aside a contract where there is "an element of fraud in the case" and (at p 820) that the test of a mutual mistake is "whether the contract would have been entered into had there been no mistake." The court also held in *Beaver v. Harris' Estate*, 67 Wash 2d 621, 409 P2d 143, 146 (1965), that an unambiguous contract can be set aside for mutual mistake, provided that the evidence is clear and convincing.

In *Buck v. Equitable Life Assurance Society, supra,* the court set aside a clear and unambiguous insurance contract to pay $1,000 (the face amount of the policy) on demand of the insured if the policy was still in effect in 15 years. A new and inexperienced insurance employee, instead of filling in a blank for the amount to be paid on such a demand with the amount of the cash value of the policy ($408), filled in that blank, by mistake, with the face amount of the policy ($1,000). The insured, although perhaps not knowing that this was a mistake, recognized that this was a highly unusual provision and one greatly to his benefit. Under these circumstances, although no fiduciary relationship existed between the parties, the Washington court held that "when duty calls for speech, silence will work an estoppel when such silence operates as a fraud upon the other party."

To the same effect, see *Bond v. Wiegardt,* 36 Wash 2d 41, 216 P2d 196 (1950). Similarly, in *Gaines v. Jordan,* 64 Wash 2d 661, 393 P2d 629 (1964), the Washington court recognized (at p 630) that there are exceptions to the rule that one who is able to read and fails to read a contract cannot be heard to deny that he executed it and that one of these exceptions arises when the other party writes the contract in terms different from those agreed upon, obtains his signature without calling his attention to the alteration, and represents that it has been written as agreed upon.

2. In this case the evidence is clear and convincing to the effect that defendant understood, based upon what he was told by the realtor, that the sum of $8,000 would be the amount of the "down payment" to be made by him in addition to the amount of the mortgage loan, so as to make financing arrangements possible; that this was the reason for a down payment in that amount;

that defendant did not understand that upon his failure for any reason to go through with the purchase he would forfeit that entire amount; that the realtor either knew, or had good reason to know, that defendant did not understand this, and that a provision for forfeiture of $8,000 on a real estate contract for $33,875 would be highly unusual, but that the realtor nevertheless prepared the earnest money contract so as to provide for such a forfeiture and obtained defendant's signature upon the contract by assuring him that "everything was all okay," without calling his attention to this important fact.

For these reasons, and based upon application of Washington law, as we understand it, to the facts of this case, we hold that the judgment for defendant in this case must be affirmed.