[No. 38839.     Department Two.     July 13, 1967.]

CLIENTS' SERVICE, INC., *Respondent*, v. ANGELINA E. PUPO, *Appellant*.*

*Ennis & Klobucher* and *William G. Ennis*, for appellant.

*R. Maurice Cooper* and *Walter R. Rodgers*, III, for respondent.

*Reported in 430 P.2d 552.

DONWORTH, J.—This action was commenced by respondent, as assignee of Pacific Realty Company, for the recovery of a sales commission claimed by the latter as the result of the sale of a tavern. The tavern, owned by appellant, was sold to J. Maurice Kennedy following the expiration of an exclusive listing agreement given by appellant to Pacific Realty. Trial was had to the court sitting without a jury, at the conclusion of which was entered a judgment for respondent in the amount of $2,900, plus attorneys' fees in the amount of $450.

At the close of the trial, the court rendered a comprehensive oral opinion in favor of respondent. Later, the court, after hearing a motion by appellant to reconsider its oral opinion, rendered a 7-page memorandum opinion in which it discussed the phases of the case as to which appellant claimed that the oral decision was erroneous and adhered to its original decision.

When the proposed findings were submitted by each party, the trial court held a further hearing, lasting an hour and 20 minutes, at which each party was fully heard as to the findings of fact which the court should make. Two days later, the court signed its findings and conclusions of law and judgment. Appellant in her assignments of error does not question the court's findings, but claims error only as to its conclusions of law in certain respects.

Thus there are now no factual issues before us, and the findings must be accepted as verities.

Appellant was the owner of a tavern known as Polar Inn in Spokane. She desired to sell the property, and; on or about May 6, 1964, signed an agreement with Pacific Realty (of which Joseph P. Wieber, a licensed realtor and broker, was the sole proprietor) granting to Pacific Realty, for a period of 6 weeks, the exclusive right to sell the Polar Inn. The agreement provided for the payment of a real-estate broker's commission of 10 per cent by the seller to the realtor upon his securing a purchaser, ready, willing and able to buy said property and upon his negotiating a contract for sale which the seller might accept. The agreement also provided, in part, that:

> [I]f the property is sold or exchanged by me *within six months after this listing expires* (or has been released by you) *to any person to whom you have offered the property during the listing period,* or any member of the Spokane Real Estate Trader's Club, *I agree to pay you the commission stated above.* In case of the employment of an attorney to enforce any of the terms of this agreement, I agree to pay a reasonable attorney's fee and all cost of collection. (Italics ours.)

The claim of Pacific Realty for a commission is based upon the italicized language of the agreement. This agreement, which was on a printed form entitled "Approved Standard Form Listing Contract of the Real Estate Trader's Club of Spokane,"[1] provided for a purchase price of $34,000, payable $11,333.33 cash, the balance at the rate of $250 per month, with interest at the rate of 6 per cent. The agreement also provided for a lease to be negotiated with appellant who was also the owner of the real property on which the tavern was located.

The property was advertised for sale by Pacific Realty by way of "blind" ads[2] placed in the local newspapers.

J. Maurice Kennedy became interested in the purchase of a tavern. He and a friend, Joseph Lyonnais, decided to purchase such a business and operate it as partners, sharing on a 50-50 basis. Through a friend who held a local beer distributorship, they learned that the Polar Inn was for sale, and that it was a profitable business establishment. Mr. Kennedy contacted appellant to talk about a possible purchase, and appellant informed Mr. Kennedy that the property was listed with Pacific Realty. Mr. Kennedy then contacted one Mr. Oglesbee, the salesman for Pacific Realty who was handling the account, and expressed his interest

---

[1] The Real Estate Trader's Club of Spokane, of which Mr. Wieber, the owner of Pacific Realty, is a member, is a group of about 25 real-estate brokers and salesmen, specializing in the sale of commercial property, in which the participating members exchange information and assist each other in procuring buyers for the listed property.

[2] "Blind" ads are those which are worded in such a way that one seeing the ad would be unable to identify the specific property referred to. The purpose of such an ad is to prevent a potential buyer from circumventing the broker by going directly to the owner of the property.

in purchasing the Polar Inn. Mr. Oglesbee made arrangements to meet with Mr. Kennedy for the purpose of showing him the premises. Both Mr. Kennedy and Mr. Lyonnais viewed the premises in the company of Mr. Oglesbee (appellant being present part of the time), and an earnest-money agreement, dated June 1, 1964, was prepared by Mr. Oglesbee for the purchase of the Polar Inn by them for a price of $30,000. The earnest-money agreement was subsequently signed by appellant, but was retained in the possession of Oglesbee because Kennedy and Lyonnais had not then been able to raise the amount of the down payment. Each had, however, paid $50 to Mr. Oglesbee.

Mr. Lyonnais was unable to raise his share of the down payment by the time the listing agreement with Pacific Realty expired. Appellant refused to extend the time of the agreement, and, instead, listed the property with another broker.

About a week following the expiration of the Pacific Realty listing agreement, Mr. Kennedy, whose interest in purchasing the Polar Inn, according to his own testimony, had continued, called appellant to further discuss the possibility of the purchase. He was referred this time to the new broker, a Mr. Blassing, and subsequently the purchase was made by Mr. Kennedy, individually, on or about July 7, 1964. The purchase price of $30,000 was payable at $10,000 down and the balance on time payments. Mr. Kennedy took possession of the Polar Inn in August, 1964.

Appellant makes six assignments of error. However, the principal question which is raised by the assignments of error is whether respondent is entitled to recover a commission under the listing agreement where the sale was made within 6 months after the expiration of the listing agreement to one who was not "procured" as a buyer by Pacific Realty.

Appellant recognized that agreements, such as that involved in the case at bar, are enforced by the courts. The purpose of such an agreement was stated by this court, quoting from a Kentucky case, in *Whiting v. Johnson,* 64 Wn.2d 135, 140, 390 P.2d 985 (1964), to be that:

". . . real estate brokerage is a highly competitive business and it is a logical conclusion that the provision was intended to protect the agent beyond the duration of the exclusive 'agency or right' to sell the property in order that he might not be deprived of his compensation for finding and presenting a purchaser during that period should the owner sell to him. Without such protection, it would have been an easy matter for the owners to circumvent his right by postponing acceptance until the definite time had expired. . . ."

We do not agree with appellant that the contract attains an unconscionable result, and we do agree with the trial court that there is no evidence in the record to indicate an overreaching in the making of this contract.

Appellant relies principally upon the case of *Wright & Kimbrough v. Dewees*, 52 Cal. App. 42, 197 Pac. 957 (1921), as authority for the proposition that a broker, in order to be entitled to a commission based upon a sale made after his listing has expired, must have been the "procuring" cause of the sale. In that case, the Supreme Court of California was concerned with a listing agreement which provided that commission "for promoting said sale" would be paid upon sale following expiration of the broker's listing to "a party to whose attention said property was brought through the agency of the said 'agent.' " The court held that such provisions required that the agent be the procuring cause of the sale.

Under different language in a listing agreement, however, the California Supreme Court has held to the contrary. In *Mills v. Hunter*, 103 Cal. App. 2d 352, 229 P.2d 456 (1951), the contract provided for the payment of a commission after the listing had expired if the sale was to "any person with whom said [agent] has been negotiating during the term hereof." And, in *Leonard v. Fallas*, 51 Cal. 2d 649, 335 P.2d 665 (1959), the contract provided for the payment of a commission upon sale after termination of the listing to "anyone whose name is registered with [owner] in writing as of the termination date." In both these latter cases, the California Supreme Court ruled that the broker,

in order to be entitled to a commission, need not have been the "procuring cause" of the sale.

■ It is clear that the question of whether the broker must have been the procuring cause of the sale in order to be entitled to a commission depends on the language used in the listing agreement. Cases cited by appellant requiring that the broker be the "procuring" cause of the ultimate sale of the property are distinguishable on this ground.

■ In the present case, the agreement provided for payment of commission upon a post-listing sale to "any person to whom you have *offered* the property during the listing period." We hold that such language did not require the broker to be the "procuring" cause of the sale. We further hold that the acts of the broker (as found by the trial court), *i.e.* advertising the property, arranging for and conducting inspections of the property, negotiating the terms of a sale, and preparing an earnest-money agreement which was signed by the parties, are sufficient to constitute an "offering" of the property to the prospective purchaser.

Appellant's argument that the term "offer" should be construed in the strict contract sense is not persuasive. We think that no such construction may reasonably be placed on that term in the context of this case.

Appellant next contends that Mr. Kennedy was not the "person" to whom the property was offered during the listing period, since all negotiations between the broker and Mr. Kennedy were with reference to the possible purchase of the property by Mr. Kennedy and Mr. Lyonnais as a partnership.[3] In short, appellant argues that the "offer" was to the partnership (and Mr. Kennedy as a partner), and not to Mr. Kennedy as an individual. However, appellant cites no authority relating to the law of partnership which requires such a holding. We, accordingly, hold this contention to be likewise without merit.

---

[3]The trial court found that, after Mr. Lyonnais was unable to raise his share of the down payment: "J. Maurice Kennedy continued to express interest in the purchase of The Polar Inn to Dave Oglesbee and to the defendant. After the expiration of the exclusive listing of Pacific Realty Co., defendant directed Kennedy to deal with her new realtor."

In summary, during the existence of the listing agreement, Pacific Realty "offered" the Polar Inn to Mr. Kennedy. When a sale of the tavern business was thereafter made to Mr. Kennedy within 6 months after the expiration thereof, Pacific Realty became entitled to a commission on the sale in accordance with the provisions of the listing agreement. Having carefully considered the remaining arguments of appellant in this regard, we hold that the trial court's conclusions on both these questions are correct.

We cannot agree with appellant that the acceptance and retention of the $100 which was paid by Kennedy and Lyonnais to Pacific Realty constituted a "waiver" by Pacific Realty of any commission to which it would be entitled under the listing agreement with appellant. No authority in point is cited by appellant, and we find this contention to be without merit.

One final argument made by appellant is that the assignment of this claim by Pacific Realty to respondent is insufficient to pass to respondent any contract right to recover attorneys' fees.

The assignment is evidenced by a document which provides that:

> For One Dollar ($1.00) and other valuable consideration, we Hereby assign all our right, title and interest in and to our commission, if any we have coming, for the sale of the POLAR INN TAVERN at North 1626 Division, Spokane, Washington, between ANGELINA PUPO and J. MAURICE KENNEDY to CLIENTS' SERVICE, INC.
>
> DATED this 12th day of January, 1965.

Thus the assignment was not only of the commission, but of all Pacific Realty's "right, title and interest in and to" that commission. As a part of that right, title and interest in and to the commission, the listing agreement provided:

> In case of the employment of an attorney to enforce any of the terms of this agreement, I agree to pay a reasonable attorney's fee and all cost of collection.

We are of the opinion that this assignment was sufficient to pass to respondent the contract right to recover a reason-

able attorneys' fee in accordance with the listing agreement.

Having carefully considered all arguments and assignments of error made by appellant, we conclude that the judgment of the trial court should be, and it hereby is, affirmed.

FINLEY, C. J., WEAVER, J., and LANGENBACH, J. Pro Tem., concur.

October 13, 1967. Petition for rehearing denied.