[No. 400-3.    Division Three.    March 30, 1972.]

LLOYD HAMMERSTAD, INC., *Respondent*, v. MARVIN M. SAUNDERS et al., *Appellants*.

*Ronald F. Whitaker* (of *Walters & Whitaker*), for appellants.

*Walter B. Dauber* (of *Tonkoff, Dauber & Shaw*), for respondent.

GREEN, J.—Plaintiff, Lloyd Hammerstad, Inc., brought an action against defendant, Eva M. Saunders, to recover a real estate sales commission. From a judgment in favor of plaintiff, defendant appeals.

On June 14, 1968, plaintiff, through one of its agents, entered into a sales agency contract with defendant to sell

defendant's house. The listing was exclusive for a period of 1 month, but contained the following extension provision upon which this action is based:

I agree to pay a commission of 6% of the sale price, or the sum of $200.00, whichever is greater, if: . . . (3) said property, or any part thereof, is sold or exchanged within twelve (12) months after the expiration hereof to any person to whom you, or any member or salesman of "Multiple", or any person authorized by such member or salesman have previously offered it, or with whom you have negotiated or who has learned through you or your advertisements, directly or indirectly, that the property was for sale. . . .

The sole issue raised on appeal is whether or not some minimal causal relationship or connection between the realtor's activities and the ultimate sale is contemplated and required by the quoted provision of the contract.

The trial court entered, among others, the following finding:

That the house was sold by defendant to Dr. and Mrs. Ricker due to circumstances having nothing to do with the pointing out of the house by the realtor, Fairy Ross. That the procuring cause of the sale to Dr. Ricker was through the activities of Mrs. Eaton and not Fairy Ross.

and concluded a commission was due the plaintiff. The only error assigned is to the conclusion that plaintiff should recover. The findings of fact become verities.

The facts surrounding the findings are not in substantial dispute. During the first month of the listing, Fairy L. Ross, a realtor and member of the multiple listing board, showed Dr. Phillip Ricker, a prospective purchaser, approximately 40 residences in Yakima, including defendant's. The evidence shows Mrs. Ross drove in front of the defendant's residence and indicated to Dr. Ricker that the residence was for sale. They examined the listing card and when Dr. Ricker learned the price was $59,500, he told Mrs. Ross to drive on because the price was too high. Mrs. Ross testified she quoted the price at $55,000. Subsequently, Mrs. Ross set up an appointment to show Dr. Ricker the interior

of the house, but this appointment was cancelled because of illness in the Ricker family. This ended the realtor's contact with Dr. Ricker.

In September 1968, Mrs. Dagny Eaton, a friend of defendant, took Mrs. Ricker to defendant's home on a social call. Mrs. Ricker learned from defendant that her house was for sale. At that time she was unaware the house had been previously pointed out to her husband. At the urging of his wife, Dr. Ricker went with her to look at the house. Defendant told the Rickers that she was asking $55,000 for the house but since she was selling it herself, she would deduct the real estate commission and sell it for about $52,000. Thereupon, Dr. Ricker offered $46,000 and a sale was consummated at $47,000. There is no evidence that defendant knew the property had been pointed out to Dr. Ricker by any salesman.

The trial court held for plaintiff in the belief that *Clients' Serv., Inc. v. Pupo*, 71 Wn.2d 610, 430 P.2d 552 (1967), compelled such result. In *Clients' Serv., Inc.*, the court held that the activities of the broker in advertising the property, arranging for and conducting inspections of the property, negotiating the terms of the sale, and preparing an earnest money agreement which was signed by the parties was sufficient to constitute an "offering" of the property to the prospective purchaser within the terms of the listing agreement. In the instant case, the trial judge in his memorandum opinion stated an offer had been made to Dr. Ricker when the property was pointed out to him and, therefore, a commission was payable under the listing agreement even though there was no connection between the pointing out of the property and its ultimate sale. In this holding, we believe the trial judge erred.

The underlying purpose of extension provisions such as that contained in the instant contract was stated in *Clients' Serv., Inc.*, at pages 613-14:

> The purpose of such an agreement was stated by this court, quoting from a Kentucky case, in *Whiting v. Johnson*, 64 Wn.2d 135, 140, 390 P.2d 985 (1964), to be that:

". . . . real estate brokerage is a highly competitive business and it is a logical conclusion that the provision was intended to protect the agent beyond the duration of the exclusive 'agency or right' to sell the property in order that he might not be deprived of his compensation for finding and presenting a purchaser during that period should the owner sell to him. Without such protection, it would have been an easy matter for the owners to circumvent his right by postponing acceptance until the definite time had expired. . . ."

Implicit in this underlying purpose is the fact that there must be some minimal causal relationship between the activities of the broker during the listing period and the ultimate sale. *Cf. Korstad v. Hoffman*, 221 Cal. App. 2d 805, 35 Cal. Rptr. 61 (1963). We find no case in this state where a broker has recovered a commission in the absence of such a relationship, and we do not believe that *Clients' Serv., Inc.* stands for such proposition. While *Clients' Serv., Inc.* held that the activities of the broker need not be the "procuring" cause of the sale, nevertheless, there was a clear connection between the activities of the broker and the ultimate sale.

In the instant case, the court expressly found there was no connection between the activities of the plaintiff or Mrs. Ross and the ultimate sale. To hold that in these circumstances plaintiff was entitled to a commission would be contrary to the underlying purpose of the extension provision.

The judgment is accordingly reversed and plaintiff's complaint is dismissed. Each party shall bear his own costs.

MUNSON, C.J., and EVANS, J., concur.